UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOHN DOE,

                          Plaintiff,                             Civil Case No: 18-cv-11528

     -against-                                    Plaintiff Demands a
                                              Trial by Jury

MORGAN STANLEY & CO. LLC,
MORGAN STANLEY SERVICES GROUP INC.,       **COMPLAINT**
CARMEN GOMEZ, individually,
LILY CHAN, individually,
JACQUELINE LUCAS, individually,
BRIAN DERBY, individually,
LISA SWEBURG individually,
LAUREN KEIGLER, individually, and
MICHAEL GREY, individually,


                            Defendants.
---------------------------------------------------------X


       Plaintiff, JOHN DOE, by and through his attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants, MORGAN STANLEY & CO. LLC, (hereinafter referred to as "Defendant"), MORGAN STANLEY SERVICES GROUP INC., (COLLECTIVELY "MORGAN STANLEY DEFENDANTS"), CARMEN GOMEZ (hereinafter referred to as "GOMEZ"), individually, LILY CHAN (hereinafter referred to as "CHAN"), individually, JACQUELINE LUCAS (hereinafter referred to as "LUCAS"), individually, BRIAN DERBY (hereinafter referred to as "DERBY"), individually, LISA SWEBURG, individually, (hereinafter referred to as "SWEBURG"), individually, LAUREN KEIGLER (hereinafter referred to as "KEIGLER"), individually, and MICHAEL GREY (hereinafter referred to as "GREY"), individually, and collectively referred to as "Defendants", upon information and belief, as follows:

## NATURE OF CASE

Plaintiff, JOHN DOE, complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991, and to remedy violations of the New York State Human Rights Law; New York Executive Law, § 290, *et seq.* (the Executive Law"), and the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367 seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, race discrimination, national origin discrimination, religious discrimination, gender discrimination, sexual orientation discrimination, sexual harassment, hostile work environment, retaliation and wrongful termination, by Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and 42 U.S.C. §1981.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. Around September 18, 2018, Plaintiff JOHN DOE submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2018-05888.

4. Around September 27, 2018, Plaintiff JOHN DOE received a Right to Sue Letter from the

EEOC for his federal charge number 520-2018-05888.

5.  As such, Plaintiff satisfied all administrative prerequisites and is timely filing this case within ninety (90) days of receiving his Right to Sue letter.

6.  Venue is proper in this court, as the events giving rise to this action arose in New York County, within the Southern District of New York.

## PARTIES

7.  At all times material, Plaintiff JOHN DOE (herein referred to Plaintiff or "DOE") is an openly-gay, Muslim male of Egyptian descent.

8.  At all times material, Defendant MORGAN STANLEY & CO. LLC (hereinafter referred to as "Defendant" or "MORGAN STALNEY") was and is a foreign business corporation duly existing by the virtue and laws of the State of Delaware that does business in the state of New York.

9.  At all times material, Defendant MOR GAN STANLEY SERVICES GROUP INC. (hereinafter referred to as "Defendant" or "MORGAN STALNEY") was and is a foreign business corporation duly existing by the virtue and laws of the State of Delaware that does business in the state of New York.

10. At all times material, Plaintiff was employed singularly, jointly, and severally by Defendants MORGAN STANLEY & CO. LLC and MORGAN STANLEY SERVICES GROUP INC.

11. At all times material, Defendants' director CARMEN GOMEZ (herein referred to as "GOMEZ") was and is employed by Defendant MORGAN STANLEY, and had supervisory authority over Plaintiff with regard to his employment.

12. At all times material, Defendants' Vice President LILY CHAN (herein referred to as "CHAN") was and is employed by Defendant MORGAN STANLEY, and had supervisory

authority over Plaintiff with regard to his employment.

13.   At all times material, Defendants' Vice President of Human Resources JACQUELINE LUCAS (hereinafter referred to as "LUCAS" was and is employed by Defendant MORGAN STANLEY, and had supervisory authority over Plaintiff with regard to his employment.

14.   At all times material, Defendants' Executive Director BRIAN DERBY (herein referred to as "DERBY") was and is employed by Defendant MORGAN STANLEY, and had supervisory authority over Plaintiff with regard to his employment.

15.   At all times material, Defendants' representative from Human Resources, LISA SWEBERG (herein referred to as "SWEBERG") was and is employed by Defendant MORGAN STANLEY, and had supervisory authority over Plaintiff with regard to his employment.

16.   At all times material, Defendants' representative from Human Resources, LAUREN KEIGLER (herein referred to as "KEIGLER") was and is employed by Defendant MORGAN STANLEY, and had supervisory authority over Plaintiff with regard to his employment.

17.   At all times material, Defendants' Vice-President, MICHAEL GREY (herein referred to as "GREY"), was and is employed by Defendant MORGAN STANLEY, and had supervisory authority over Plaintiff with regard to his employment.

## MATERIAL FACTS

18.   Around July 31, 2017, Defendant hired Plaintiff DOE as a trading associate.

19.   Around October 16, 2017, DOE became the target of inappropriate comments regarding his sexual orientation made by co-workers and management, implying that because he is a gay

4

man he would engage in sexual activities with his colleagues.

20.    Specifically, Defendants employee Farraj Mahmoud said in a group chat, "JOHN and I are preparing for Mexico too." Defendant CHAN said, "you guys are going together?" to which Defendant GOMEZ said, "wait r u going to Mexico with JOHN. Lol. No judgment." Farrah Mahmoud replied to clarify, "no same place just different months." Plaintiff DOE interjected, "cat is coming too." Farraj Mahmoud then said, "JOHN said he cant keep up with a stud like myself." Plaintiff DOE complained and said, "yea lets just end this. Thanks. Byeee." These comments created a hostile work environment for DOE, and despite Plaintiff's supervisors being involved in the conversation, no corrective action was ever taken.

21.    Around November 9, 2017, Defendant CHAN snapped at Plaintiff, as she routinely did to all employees, and threatened to stab Plaintiff DOE.

22.    Around November 2017, on numerous occasions, Defendants' director, CARMEN GOMEZ approached Plaintiff DOE while he was at his desk from behind and stroked Plaintiff DOE's shoulders and rubbed his neck. Defendant GOMEZ also frequently asked Plaintiff DOE to grab coffee outside of work and suggested they should "get a room," implying she wanted to have sex with Plaintiff DOE. Plaintiff DOE rebuffed these advances, stating that he was gay and happily married. Defendant GOMEZ's conduct made Plaintiff DOE extremely uncomfortable, further contributing to the hostile work environment he was forced to endure.

23.    Around December 13, 2017, Plaintiff's end-of-year review demonstrated Plaintiff DOE was a "top performer" and " an exceptional cultural fit" for the position. The review was presented by Defendants' Vice-President, MICHAEL GREY (herein referred to as "GREY"), and Defendants' director GOMEZ.

24.   Around December 14, 2017, Defendant GOMEZ becomes intoxicated at the annual holiday party and touched Plaintiff DOE inappropriately by caressing Plaintiff's hands and poking his buttocks on a number of occasions.  Defendant GOMEZ also asked Plaintiff DOE to leave with her.  Plaintiff DOE rebuffed these sexual advances, and Defendant GOMEZ becomes visibly upset and left the venue.

25.   Around January 2018, Defendants' Vice President LILY CHAN (herein referred to as "CHAN") made comments about Muslims during the announcement of the Supreme Court decision on Executive Order 13769.  Specifically, Defendant CHAN asked Plaintiff DOE, "Why are Muslims so violent?" "If just they followed the rules, we would let them in."  Defendant CHAN also consistently asked Plaintiff DOE if Egypt was "on the list" of countries with restricted entry.  Additionally, Defendant CHAN teased Plaintiff DOE saying that he was going to be deported.  These discriminatory comments continued to contribute to an ongoing hostile work environment for Plaintiff.

26.   Around February 2018, Defendant GOMEZ sexually assaulted Plaintiff and forced herself onto DOE in a meeting room.  Defendant GOMEZ attempted to perform oral sex on Plaintiff DOE by reaching to his groin and trying to unzip his pants.  Shocked by this sexually harassing conduct, Plaintiff DOE immediately left and returned to his desk.

27.   From around December of 2017 to February of 2018, Defendant CHAN made offensive comments to Plaintiff about his religion as a Muslim.

28.   For example, Defendant CHAN teased Plaintiff about not being able to eat pork.

29.   Similarly, around August 31, 2017, Defendant CHAN made jokes about Plaintiff fasting during the Muslim Holiday Arafat, and even asked Plaintiff to break his fast because, "there is a lot of volume coming in and the team needs your full attention."  These comments were

extremely offensive to Plaintiff.

30.     Around February 9, 2018, DOE sent an extremely detailed email to Defendants' Vice President of Human Resources JACQUELINE LUCAS (herein referred to as "LUCAS") regarding the escalating sexual harassment, religious discrimination and national origin discrimination, but not corrective action was taken.

31.     Specifically, around February 9, 2018, Plaintiff emailed Defendant LUCAS, "Hello, ***I'm reaching out to report bullying and sexual harassment incidents***. ***Over the past few months, my direct manager – Carmen – has been sexually harassing me starting with inappropriate comments to unwanted touching. I have refused these advances and as a result of that I've been isolated from the team and my manager rarely speaks to me now. After refusing these advances, she started to skip our weekly 1on 1, and stopped supporting me when it comes to day to day functions of the job***. I have been a top performer since my time here in July, and now she criticizes everything I do and creating a very poor perception of me. ***She constantly touches my shoulder and strokes my arm when she's behind me. After refusing these advances by moving away she got extremely annoyed and stopped talking to me leaving me stranded with work without guidance***. I'm sure the cameras on the floor will show this behavior – she now asks everyone on the team if they need help and/or if everything is going ok multiple times during the day and skips me – she takes lunch breaks with other people on the team and does not bother inviting me. This is creating an extremely uncomfortable work environment as I'm unsure how to deal with her and its causing a lot of stress on my end because I'm not sure what to do to make this right. I do have dreams and aspirations within the organization that I would like to pursue and she directly threatened me by saying she will give a bad recommendation to anyone who asks for one. ***I've also been***

*bullied by a VP called Lily Chan – over the past few months she has been snapping at me and has been intolerant towards my cultural and religious behavior such as not eating pork – she keeps teasing me about how great pork tastes and how I'm missing out by not having it.  She made jokes about why I fast (Ramadan) and if I can break my fast because there's a lot of volume coming in and the team needs my full attention which extremely offensive and ignorant.*"

32.     Around late January or early February 2018, Defendant GOMEZ threatened to end Plaintiff DOE'S career, starting, "I will never give you the recommendation you need to move forward if you don't play along with what I want" in the office during a one on one meeting with Plaintiff.   Plaintiff said "but you gave me a top performer review," and Defendant GOMEZ replied that it wouldn't matter because the new hiring managers would still call her and ask her for detailed feedback about Plaintiff, and she could still ruin his career.

33.     Around February 15, 2018, Plaintiff DOE reported the sexual harassment he was forced to endure to Defendants' Executive Director BRIAN DERBY (herein referred to as "DERBY") via email.  DERBY responded to Plaintiff's email by asking Plaintiff DOE to "acknowledge the code of conduct."   Plaintiff DOE replied and asked why he was being told to view the code of conduct if had done nothing wrong and was in fact the victim of sexual harassment and discrimination.   Plaintiff specifically said he felt that he was being punished for complaining of the severe sexual harassment and discrimination that he was forced to endure.

34.     Specifically, around February 15, 2018, Defendant DERBY sent Plaintiff a threatening email stating, "JOHN, as discussed please ensure you are familiar with the Code of Conduct and Employee Conduct Policy attached," making it clear that if Plaintiff continued to complain about the discrimination he faced the Defendants would manufacture a code of conduct

violation regarding Plaintiff.

35.   Plaintiff immediately responded around February 16, 2018, "Brian, I'm slightly confused as to why this is being sent to me.  The code of conduct was shared with me during my orientation along with other documents and links.  The policy is also readily available on the intranet so I'm not quite sure why it is that I need to be  "reminded" of the policy for not doing anything that goes against the policy.  I will also take your advice and raise any issues/questions to HR."

36.   Around February 28, 2018, Plaintiff DOE provided screenshots of internal chats with Defendant CHAN to Defendant GOMEZ, demonstrating that on November 9, 2017, Defendant CHAN in fact lashed out at Plaintiff and threatened to stab Plaintiff DOE. Defendant GOMEZ merely responded sarcastically to the complaint.

37.   Specifically, around February 28, 2018, plaintiff sent an email to defendant LENIHAN with the subject line "Follow Up – Conversation Snapshot," and wrote, "Hello, following our conversation, I mentioned I will try finding my escalation to my manager where Lily has been snapping at me. Please find below, please note nothing happened following my chat to my manager where she sarcastically responds. This was not escalated or addressed." Attached to this email was the snapshot of the conversation between plaintiff and defendant that took place on November 9, 2017. The conversation, titled "Conversation with Gomez, Carmen (ISG Product Operations), went as follows:

> Gomez, Carmen (ISG Product operations) 10:33 AM:
>      How do u know…I can't tell
> DOE, JOHN (ISG Product Operations) 2:03 PM:
>      Did you hear her lashing out at me?
>      It's out of control
> Gomez, Carmen (ISG Product Operations) 2:04 PM:
>      Better her than me
> DOE, JOHN (ISG Product Operations) 2:45

We gotta talk about her behavior
Do you have a minute

38.   Around March 5, 2018, Plaintiff DOE emailed Defendant LENIHAN to inquire about the status of the investigation of his initial complaint.   Defendants' Human Resources representative KIRSTEN LENIHAN (herein referred to as "LENIHAN") stated that she would not be able to discuss the investigation with Plaintiff DOE.   In addition to his request for an update, Plaintiff DOE told Defendant LENIHAN that he did not feel safe sitting next to Defendant CHAN after she threatened to stab him.   Despite Plaintiff DOE's specific complaint, Defendant CHAN continued to sit next to Plaintiff for several months afterwards. Plaintiff DOE told LENIHAN that he would report Defendant CHAN to the authorities if she threatened him again.

39.   Specifically, around March 05, 2018, plaintiff sent an email to defendant's employee Lenihan with the subject line "Thank You", and wrote, "Hi Kirsten, I would like to thank you for looking into the issues I've raised. I fully understand that you would not be able to share the final results of the snapping issue I've raised against Lily, and I hope that HR/management will take the appropriate steps to deal with this as I'm sure you would agree no one should be coming in to work fearing that someone could potentially attack/ harm both physically or mentally. In addition, I believe someone should be informing Carmen that feeling uncomfortable/unsafe is no joking matter, and that she should have escalated my complaint to her accordingly and immediately instead of responding in a very sarcastic manner evident in her IM chat. Please also note that I would be within my rights to call the authorities and file for assault charges if Lily were to ever snap or threaten me again because I felt an imminent danger due to the way she snapped at me."

40.   Around April 8, 2018, Plaintiff DOE sent an email to Defendants' Human Resources

Executive Director LISA SWEBURG (herein referred to as "SWEBURG"), again reporting the sexual harassment and discrimination Plaintiff faced.  Plaintiff DOE also described how Defendant GOMEZ manipulated Plaintiff's work queue and provided constant negative feedback on quality work in front of the rest of the trading team.  Plaintiff DOE requested that Defendant GOMEZ no longer manage him. Defendant SWEBURG stated she would forward a summary of the meeting to Plaintiff and confirm the details of the sexual assault during their investigation.  Plaintiff DOE never received said summary and no corrective action was taken.

41.  Specifically, around April 08, 2018, plaintiff sent an email to defendant SWEBURG with the subject line "Retaliation", and wrote,  "I've reached a point where I can no longer perform at my best with Carmen as my manager. *I'm under a significant amount of stress and discomfort following the sexual and mental abuse that I've had to go through with her as my manager.* As I have mentioned during our meeting, Carmen criticizes every single thing I do and finds a way to make me look extremely incompetent. She assigns work to my queue and them removes it – and claims that I have management issues when it comes to dealing with my work. I have raised the fact that there is no way to track who assigns the workload because someone can select a certain e-mail to be assigned and then move that email out of the queue without any sort of track – which she has been doing to me. *I am requesting all communication with Carmen be stopped immediately. Every time I have to sit down with her on a weekly basis, I'm reminded of how she forced herself on me and it's creating an extremely stressful work environment."*

42.  Defendant SWEBURG sent an email to plaintiff to cancel their meeting that was scheduled for April 11, 2018. In the email, she wrote, "JOHN, apologies – I again need to reschedule.

My review of your concerns is continuing and I will be in touch regarding a new meeting time.

43. Around April 12, 2018, Plaintiff DOE copied Defendants' Vice President GREY in an email demonstrating how Defendant GOMEZ manipulated Plaintiff's queue. Specifically, Defendant GOMEZ asked DOE to complete a task that had already been completed in front of the rest of the trading team. This then gave the appearance that Plaintiff DOE was not doing his work and burdening the team with tasks that he had been assigned, which affected the way the team treated Plaintiff. Despite Plaintiff's complaint, Defendant GREY did not correct the issue.

44. Around April 17, 2018, defendant SWEBURG wrote to plaintiff, "Hi JOHN, I would like to meet with you tomorrow to follow-up on some points we discussed. Please let me know if 12:30 works for you. I have confirmed with your management that it's fine for you to be off the desk at that time.

45. Around April 18, 2018, Plaintiff DOE again met with Defendants' Human Resources Executive Director SWEBURG. Plaintiff DOE stated that he felt like he was being discriminated against based on his gender and that if a female colleague had complained about a male supervisor harassing her the situation would have been addressed. Defendant SWEBURG refused to discuss Plaintiff's complaints. Plaintiff DOE inquired about the use of cameras in the Defendants' investigation, and Defendant SWEBURG confirmed that the Defendants did not review any camera footage to search for evidence of the sexual assault or sexual harassment Plaintiff was forced to endure. Plaintiff DOE again requested that he no longer be managed by Defendant GOMEZ, but his request was denied. Plaintiff followed up with an emailing detailing his concerns with the lack of corrective action, and the retaliation

Plaintiff was forced to endure.

46.     Specifically, Around April 18, 2018, plaintiff wrote an email to defendant SWEBURG with
        the subject line "RE: Follow-up Meeting" and an attachment "RE: Please Allocate MSFX
        TNLA: CITIGROUPAM," and wrote, "Lisa, I'm extremely disgusted with ho this
        investigation is going so far. *My escalations are not being addressed nor are they being
        taken seriously. I have requested that all communication between myself and Carmen to be
        stopped immediately and that has not happened, she still manages my work and still
        manipulates my work queue to remove e-mails as I have escalated to you previously. I'm
        attaching the e-mail showing she still manages my work queue after I had requested for all
        communication to stop.* I see my reporting chain has changed, but that doesn't really mean
        anything if she can still manage me. *What do I need to ensure the person who has been
        sexually abusing me does not get to communicate with me anymore on any level? I feel
        this would have been handled very differently if I were a female escalating a sexual
        harassment complaint regarding a male manager*."

47.     Around April 18, 2018, plaintiff wrote to defendant SWEBURG, "I'm very concerned
        regarding the feedback you're getting regarding my work, workload, and my attitude towards
        my team. I make every effort to make sure everyone is covered from a work perspective, and
        I ask on a <u>daily</u> basis if anyone needs help with anything. *As I've mentioned, I believe there
        is a strong bias against me since my relationship has deteriorated with Carmen due to the
        sexual abuse I've gone through and the fact that I've come forward with these complaints
        and it's extremely disturbing to know that, just now, I'm not being a team player when in
        the past I've had no issues. These allegations are completely false.* My most recent review
        states that I am in fact a team player (excerpt below form my performance review) and I've

always reached out to help people in need. " The following is the excerpt from his performance review.

   a)  Highlight the attributes that most differentiate this employee.
          Attributes mentioned in JOHN's 360 included a willingness and inclination to learn, positive attitude, accountability, and a team player. JOHN seamlessly integrated into the team and is well like by his peers and is seen as a positive addition to the group.

   2. Culture and Leadership
     Rate this employee's demonstration of the Firm's values (Putting Clients First / Leading with Exceptional Ideas / Doing the Right Thing / Giving Back) relative to your expectation.
         Exceeds expectations

   1.  Describe this employee's contributions relative to his/her goals and your expectations.
          JOHN joined the team and made an immediate impact by quickly learning the day to day tasks and prior backup coverage. Expectations were met with willingness to learn and jump in to take on everyday responsibilities. JOHN was also able to parlay his previous experience at MS to reacquaint himself with previously used and learn new systems quickly.

48.   Plaintiff's email continued, "The lack of camera footage, as confirmed by yourself, compromises credibility here. The cameras would confirm that I stand up and walk over to my colleagues and ask them if they need anything before I leave for the day. The cameras would also confirm that I don't turn my back during the team meeting and that I face the board to watch the agenda for the day, and finally the cameras would in fact confirm that Carmen has been sexually abusing me. These false allegation seem to be brought up, just now, in retaliation of my complaint and confrontation with Carmen asking her to stop sexually harassing me."

49.   Around May 1, 2018, Plaintiff DOE sent an email to Defendants' Executive Director, BRIAN DERBY, asking to be transferred out of the team Plaintiff was assigned to, because at this point the whole team was retaliating against Plaintiff DOE by making false statements about his attitude, workplace behavior, and performance.  In the email, Plaintiff DOE attached a

message from the CEO, stating that retaliation against any employee who has come forward to complain of a hostile work environment is strictly prohibited.   Plaintiff specifically addressed the sexual harassment and discrimination and retaliation that he was forced to endure.

50.   Specifically, around May 1, 2018, Plaintiff emailed Defendant DERBY with a subject line "HR follow up – Sexual Abuse and an attachment titled "Sexual harassment in the Workplace, and wrote, "***Brian, Following the sexual abuse that I have gone under Carmen as my manager, I'm requesting to be allowed to transfer out of this team.   The sexual abuse has weighed heavily on me as I keep blaming myself for allowing it to happen and not stopping it right away.   I though by letting it happen and not speaking up sooner, I would avoid any issues with her and not jeopardize my career at this bank.***   Since my escalation, I've notices a very clear change in attitude towards me and how I get treated.  I've, just recently, received feedback that I don't support the team and I leave without asking if anyone needs help.  This is absolutely false as I stand up every day and ask the team if they need anything before I leave.   It's very strange to see this feedback coming "collectively" from the team when I have had absolutely no issue prior to my complaint.  I cannot believe the whole team is willing to falsify statements about me when I have been nothing but supportive.  ***I had to seek mental counseling to address what I have been going through and I just can't continue being on this team know that everyone is trying to discredit all the work and effort that I do.  James Gorman had sent out an e-mail on November 27th, 2017 (attached) urging those who have any concerns to speak up and ensuring that retaliation against those who come forward is strictly prohibited: however, this has not been the case with me and I have been retaliated against through falsified accusations regarding my***

*work, attitude, and my performance.  It is actually very odd to see this feedback coming just now when my most recent review highlights my dedication to this team and my willingness to always support*."  Plaintiff then attached the metrics, which showed him exceeding expectations in the area of "Culture and Leadership" and state that Plaintiff was a "team player."

51.   Around May 7, 2018, Defendants' Human Resources Executive Director SWEBURG asked Plaintiff DOE to meet again.  Plaintiff DOE expressed his frustration after meeting with multiple representatives from Human Resources regarding the sexual harassment and retaliation he had experienced and no corrective action had ever been taken.

52.   Around May 8, 2018, Plaintiff wrote to Defendant SWEDBERG, "*I've had close to half dozen meetings that have absolutely added no value to this investigation*.  All I've heard from you and your tem members is "Were not able to corroborate".  I have provided evidence that Lily has been in fact snapping and lashing out at me through my chat escalations to my previous manager, but apparently HR has not been able to corroborate a written escalation and my previous manager's sarcastic acknowledgement "better her than me" followed by completely ignoring my escalation – this was share with your colleagues and Jacqueline stated that was in fact my fault for not escalating the below further."  Plaintiff then provided the text of the chat.  Plaintiff continued, "*I'm being retaliated against through falsified statements regarding my work, attitude, and actions based on what you have "confirmed" with the team – which is also quite interesting how theses "confirmed" allegations about me are surfacing right after I came forward with my complaints*."  Plaintiff continued, "*I have had to resort to mental counseling to address the sexual abuse and discriminatory and retaliatory behavior I've faced since my escalation and I will not put myself through*

*meeting where all I heave about is "we're not able to corroborate*." Plaintiff ended, "I think this process is quite disgusting actually for not looking at facts such as camera footage and written escalations and instead relying on statements that could are biased. Had I been a female complaining about a male manager this department would have taken a completely difference approach in investigating this matter."

53. Around June 6, 2018, Plaintiff DOE sent an email to Defendants' Vice President GREY describing the multiple panic attacks he had experienced as a result of the continued sexual harassment and hostile work environment Plaintiff was forced to endure. Plaintiff wrote to Defendant GREY, "***Mike, I've been extremely distraught ever since I have come forward with the sexual abuse I've gone through under Carmen. Every time she walks behind me, I'm constantly remembering what she did and it immediately causes me to have a panic attack which then forces me to leave to the restroom and do a few breathing exercised to relieve the attacks***." Defendant GREY responded and merely told Plaintiff he should speak with HR. Plaintiff followed up by pointing out an example of the retaliation he was enduring, and specifically wrote to Defendant GREY, "I just don't understand why on April 10th, 2018 Mo was allowed to work from downstairs while Mile Meola was out of the office? I'm not sure why I'm singled out here and the rules aren't applied to everyone equally.

54. Around June 8, 2018, Plaintiff DOE again complaint to Defendants' Vice President GREY about the persistent sexual harassment and hostile work environment Plaintiff was forced to endure, and stated that it is weighing heavily on him. Plaintiff DOE also reiterated that he is continuing to seek mental health counseling to deal with the sexual assault and sexual harassment he was forced to endure.

55. Specifically, around June 8, 2018, Plaintiff emailed Defendant MICHAEL GREY and stated,

"***I do apologize for the delay, as I've mentioned I have been extremely distraught following the sexual abuse I've gone through under Carmen and it has weighed heavily on me. … I will also be seeking additional counseling to deal with the stress tied to the sexual abuse so that I may try and finish these tasks***."

56.    Around June 11, 2018, Plaintiff DOE sent an email to Defendant GREY confirming that Plaintiff is attending mental health counseling relating to the discrimination, sexual harassment and retaliation that Plaintiff was forced to endure.

57.    Around June 18, 2018, Plaintiff DOE sent another email to Defendant GREY confirming that he is continuing to attend mental health counseling.

58.    Around June 28, 2018, Plaintiff DOE met with another representative from Human Resources, LAUREN KEIGLER, as Defendants' Human Resources Executive Director SWEBURG had not escalated the investigation or taken any corrective action.    Plaintiff DOE stated that he has been experiencing severe anxiety as a result of the hostile work environment.   During the meeting, Plaintiff DOE also stated that Defendant GREY was not approving his timesheets on time and was falsifying his clock-in/clock-out reports, which cause Plaintiff DOE further stress, as he was unsure if he would get paid on time.   Plaintiff followed up with an emailing confirming the contents of the meeting.

59.    Around June 28, 2018, Plaintiff emailed Defendant KEIGLER and stated, "***Lauren, I've reached a point where I can no longer tolerate this abusive and discriminatory environment.  I've ha to seek multiple counseling session after being molested by Carmen and I still can's manage to deal with the abuse***.   In addition, Mike has been refusing to approve my timesheet, he's claiming that my lunch breaks are not logged in correctly for some reason without providing any proof (attached).   This was yesterday and my hours are

still not approved.  I need to be paid on time and without any delays.  I should not be forced into a situation where I'm constantly thinking of whether I'll get paid or not as the last thing I need is additional stress.  I'd like to schedule a time today to speak with you."  Yet, Plaintiff's complaints of discrimination were to no avail, and no corrective action was taken.

60. Additionally, Plaintiff DOE was forced to work through his lunch breaks due to the amount of work, but was forced to log a 30-minute break on his timesheets or else they would not be approved.

61. Between July 4 and July 19, 2018, Plaintiff DOE took a required two-week vacation.

62. Around July 19, 2018, Plaintiff DOE attended a meeting with Human Resources and Defendants' attorneys present.  Plaintiff DOE was put on administrative leave for allegedly violating the code of conduct.  Prior to the meeting, there was never any mention of disciplinary actions or an internal investigation regarding Plaintiff's conduct.  Plaintiff DOE was the only employee placed on administrative leave.

63. Around August 1, 2018, Plaintiff DOE attended a follow-up meeting with Human Resources and Defendants' attorneys present.  Plaintiff's attorney was present by telephone.  Defendant wrongfully and unlawfully terminated Plaintiff during this meeting.

64. Defendant discriminated against Plaintiff because of his sex, gender, sexual orientation, race, religion and national origin.

65. Defendants retaliated against Plaintiff and ultimately wrongfully and unlawfully terminated Plaintiff for rebuffing the sexual advances of his supervisor, as well as for making numerous complaints of discrimination.

66. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

67.   As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

68.   As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

69.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

70.   The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendant subjected Plaintiff.

71.   Defendants' actions constituted a continuing violation of the applicable federal, state city and county laws.

72.   Plaintiff claims actual and/or constructive discharge by the Defendants.

73.   Plaintiff hereby demands reinstatement to his position.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

74.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

75.   Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices, It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin;

76.   Defendant MORGAN STANLEY engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by allowing sex discrimination, gender discrimination, sexual orientation discrimination, race discrimination, national origin discrimination and a hostile work environment.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendants)

77.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

78.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a)  provides  that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

79.   Defendants MORGAN STANLEY engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

### AS A THIRD CAUSE OF ACTION
### DISCRIMINATION AND RETALIATION IN VIOLATION
### OF 42 U.S.C. § 1981
### (Against All Defendants)

80.  Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

81.  42 U.S.C. Section 1981 states as follows, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

82.  Section 1981 further states that, "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

83.  Defendants discrimination against Plaintiff in violation of the rights of Plaintiff as afforded to him by the Civil Right Act of 1866, 42 U.S.C. 1981.

84.  By the conduct described above, Defendants intentionally deprived Plaintiff, a male of the Egyptian and Muslim race, of the same rights as are enjoyed by non-Egyptian and non-Muslim employees, to the creation, performance, enjoyment and all benefits and privileges of their employment relationship with Defendants.

85.  As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief, and has suffered anguish,

humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling them to compensatory damages.

86. Defendants acted with malice or reckless indifference to the rights of the above-named man of the Egyptian and Muslim race, thereby entitling him to an award of punitive damages.

87. To remedy the violations of the rights of each individual Plaintiff secured by Section 1981, Plaintiff requests that the Court award the relief prayed for below.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

88. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

89. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

90. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his sex, gender, race, national origin, predisposing genetic characteristics, marital status, and sexual orientation.

91. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

92.  Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

93.  New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

94.  Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

95.  Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

96.   New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

97.  Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

98.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

99.   The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

100.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of his sex, gender, race, national origin, marital status and sexual orientation.

101.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

102.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

103.   The New York City Administrative Code Tide 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate

against any person because such person has opposed any practices forbidden under this chapter. . . "

104.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(7) by discriminating against Plaintiff because of his opposition to the unlawful employment practices of Plaintiffs' employer.

**AS A NINTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

105.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

106.   The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

107.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

108.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

109.   Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere

with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

110. Defendants violated the above section as set forth herein.

## AS AN ELEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

111.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

112.   Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

113.    Defendants violated the above section as set forth herein.

114.    As a result of defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A TWELFTH CAUSE OF ACTION FOR
## ASSAULT AND BATTERY
## AGAINST DEFENDANTS CHAN AND GOMEZ, INDIVIDUALLY,

115.    Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

116.    That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiff herein.

## AS A THIRTEENTH CAUSE OF ACTION BY VICTIM OF CONDUCT
## CONSTITUTING CERTAIN SEXUAL OFFENSES
## AGGRAVATED SEXUAL ABUSE IN THE FIRST DEGREE
## AGAINST DEFENDANT GOMEZ, INDIVIDUALLY

117.    Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

118.    § 130.35 of the New York State Penal Law provides as follows: Rape in the first degree 1 A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven years old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.35

119.    § 130.50 of the New York State Penal Law provides as follows: Criminal sexual act in the first degree 1 A person is guilty of criminal sexual act in the first degree when he or she

engages in oral sexual conduct or anal sexual conduct with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven yeas old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.50.

120.   Section 130.70 of the New York State Penal Law; "Aggravated sexual abuse in the first degree" provides that "A person is guilty of aggravated sexual abuse in the first degree when he inserts a foreign object in the vagina, urethra, penis or rectum of another person causing physical injury to such person:

(1) By forcible compulsion; or

(2) Who is incapable of consent by reason of being physically helpless;

121.   Section 130.70 of the New York State Penal Law; "Aggravated sexual abuse in the first degree" provides that "A person is guilty of aggravated sexual abuse in the first degree when he inserts a foreign object in the vagina, urethra, penis or rectum of another person causing

122.   Aggravated sexual abuse in the first degree is a class B felony."

123.   Defendant GOMEZ violated the herein sections as set forth herein.

124.   Defendant GOMEZ sexually assaulted Plaintiff in a way that was in violation of the above.

125.   § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or

course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

126.   Defendant GOMEZ is civilly liable under § 213-c for violating all of the above Sections of the New York State Penal Law as described above.

127.   Defendants violated the above law as set forth herein.

### AS A FOURTEENTH CAUSE OF ACTION
### GENDER MOTIOVATED VIOLENCE PROTECTION ACT
### AGAINST DEFENDANT GOMEZ, INDIVIDUALLY,

128.   Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

129.   N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a

crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

130. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

131. N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

132. Defendant GOMEZ's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

133. As a result of defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.


**AS A FIFTEENTH CAUSE OF ACTION**
**FOR INTENTIONAL INFLICTION OR EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

134. Plaintiff repeats and re-alleges each and every allegation made in the complaint as if they were set forth herein fully at length.

135. Defendants' behavior was extreme and outrageous to such extent that the action was

atrocious and intolerable in a civilized society.

136.    Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

137.    Defendants caused Plaintiff to fear for Plaintiff's own safety.

138.    Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

139.    As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.


**AS A SIXTEENTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

140.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

141.    Defendants knew, or reasonably should have known, that Defendants were engaging in the unlawful behavior described herein above.

142.    At all times material herein, Defendants knew, or reasonably should have known, that the conduct, acts, and failures to act of all other Defendants and/or supervisors, agents and employees as described herein above violated Plaintiffs rights under federal, state and municipal statutes, codes and ordinances.

143.    At all times material herein, Defendants knew, or reasonably should have known, that the incidents, conduct, acts, and failures to act described herein above, would and did proximately result in emotional distress to Plaintiff, including, but not limited to, loss of sleep, anxiety, tension, depression, and humiliation.

144. At all times material herein Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that unless Defendants, and each of them, intervened to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act, of all other Defendants and/or supervisors, agents or employees as alleged herein above, said conduct, acts, and failures to act would continue, thereby subjecting Plaintiff to personal injury and emotional distress.

145. Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that unless Defendants, and each of them, intervened to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act of the Defendants and others as described herein, Defendants' failure to so protect, supervise, and intervene would have the effect of encouraging, ratifying, condoning, exacerbating, increasing and worsening said conduct, acts, and failures to act.

146. At all times material herein, Defendants, and each of them, had the power, ability, authority, and duty to so intervene, supervise, prohibit, control, regulate, discipline, and/or penalize the conduct of all other Defendants and/or supervisors, agents or employees as described herein above.

147. Despite said knowledge, power, and duty, Defendants and each of them negligently failed to act so as to prevent, supervise, prohibit, control, regulate, discipline, and/or penalize such conduct, acts, and failures to act, or to otherwise protect Plaintiff.

148. As a direct and proximate result of the failure of Defendants to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act of all other Defendants and/or supervisors, agents or

employees as alleged herein above, said conduct, acts, and failures to act were perceived by them as, and in fact had the effect of, ratifying, encouraging, condoning, exacerbating, increasing, and/or worsening said conduct, acts, and failures to act.

149. At all times material herein, the failure of Defendants to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act of all other Defendants and/or supervisors, agents or employees violated Plaintiff's rights under federal, state, and municipal statutes, codes and ordinances.

150. As a direct and proximate result of Defendants' actions and failures to act, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; she has incurred and will continue to incur medical expenses for treatment by mental health and other health professionals, and for other incidental expenses; and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

151. Defendants' conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights.  The acts of Defendants were performed with the knowledge of an employer's economic power over its employees. Defendants, through their officers, managing agents and/or supervisors, authorized, condoned and ratified the unlawful conduct of all of the other Defendants in this action. Consequently, Plaintiff is entitled to punitive damages from all Defendants.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.

Dated:  New York, New York
         December 10, 2018

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

By:     _/s/ Abe Melamed_____
             Abraham Z. Melamed, Esq.
             1 Penn Plaza, Suite 4905
             New York, New York 10119
             (212)587-0760