**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE,

              Plaintiff,

    -against-

MORGAN STANLEY & CO. LLC,
MORGAN STANLEY SERVICES GROUP INC.,
CARMEN GOMEZ, individually,
LILY CHAN, individually,
JACQUELINE LUCAS, individually,
BRIAN DERBY, individually,
LISA SWEBERG individually,
LAUREN KEIGLER, individually, and
MICHAEL GREY, individually,

              Defendants.

Civil Case No: 18-cv-11528

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION

Sam S. Shaulson (NY ID  2611457)
Thomas A. Linthorst (NY ID 3991437)
Kimberley E. Lunetta (NY ID 4421301)
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178-0060
Tel.: 212-309-6000
Fax: 212-309-6001
sam.shaulson@morganlewis.com
thomas.linthorst@morganlewis.com
kimberley.lunetta@morganlewis.com

*Attorneys for Defendants*

Dated:  March 19, 2019

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................. 3

III.  ARGUMENT ......................................................................................................... 5

      A.    The Federal Arbitration Act and Supreme Court Authority Require the Court to Enforce The Parties' Arbitration Agreement.......................................... 5

      B.    The Court Should Compel Arbitration And Stay This Case................................. 6

            1.    It Is Undisputed That Plaintiff Entered Into A Valid And Enforceable Arbitration Agreement Requiring Arbitration Of All Of His Claims, Except That Plaintiff Challenges The Arbitrability Of His Sexual Harassment Claims........................................... 6

            2.    The Court Should Compel The Question Of Whether Plaintiff's Sexual Harassment Claims Are Arbitrable To Arbitration Pursuant To The Parties' Express Agreement ......................................... 7

      C.    To The Extent the Court Addresses The Question, It Should Find That Plaintiff's Sexual Harassment Claims Are Arbitrable ...................................... 10

            1.    CPLR § 7515 Does Not Apply Retroactively......................................... 11

            2.    CPLR § 7515 Does Not Apply To The Arbitration Agreement Because That Law Is Inconsistent with the FAA................................... 12

            3.    To The Extent CPLR § 7515 Applies To The Arbitration Agreement, It Is Preempted By The FAA ............................................. 12

      D.    The Court Should Stay These Proceedings....................................................... 14

IV.  CONCLUSION.................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance Bernstein Investments Research & Mgmt., Inc. v. Schaffran*,
   445 F.3d 121 (2d Cir. 2006) ............................................................................................8, 10

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .........................................................................................................5, 13

*Banus v. Citigroup Glob. Markets, Inc.*,
   No. 09-7128 (LAK), 2010 WL 1643780 (S.D.N.Y. Apr. 23, 2010), *aff'd*, 422
   F. App'x 53 (2d Cir. 2011) ....................................................................................................8

*Bell v. Cendant Corp.*,
   293 F.3d 563 (2d Cir. 2002) .................................................................................................8

*Chew Heong v. United States*,
   112 U.S. 536 (1884) .............................................................................................................11

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) .................................................................................................................5

*Contec Corp. v. Remote Solution Co.*,
   398 F.3d 205 (2d Cir. 2005) .................................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ...............................................................................................................5

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   191 F.3d 198 (2d Cir. 1999) ...............................................................................................13

*Emilio v. Sprint Spectrum L.P.*,
   508 F. App'x 3 (2d Cir. 2013) ..............................................................................................9

*Epic Systems Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ........................................................................................................12

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ...............................................................................................................7

*Guyden v. Aetna, Inc.*,
   544 F.3d 376 (2d Cir. 2008) .................................................................................................6

*Jacobus v. Colgate*,
   217 N.Y. 235 (1916) (Cardozo, J.) .....................................................................................11

*Katz v. Cellco Partnership*,
    794 F.3d 341 (2d Cir. 2015)......................................................................................14

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011).........................................................................................................5

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)....................................................................................................11

*Lewis Trees Serv., Inc. v. Lucent Techs. Inc.*,
    239 F. Supp. 2d 332 (S.D.N.Y. 2002).........................................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)......................................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..........................................................................................................6

*Oldroyd v. Elmira Sav. Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998)...........................................................................................6

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993).........................................................................................13

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)..................................................................................................7, 10

*South Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assurance Co.*,
    840 F.3d 138 (3d Cir. 2016).........................................................................................7

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984)........................................................................................................13

*U.S.W.A. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)......................................................................................................6

**Statutes**

42 U.S.C. §1981.................................................................................................1, 4, 13

Federal Arbitration Act ................................................................................. *passim*

National Labor Relations Act ...................................................................................12

New York City Human Rights Law............................................................................1

New York's Gender-Motivated Violence Protection Act............................................1

Sarbanes-Oxley Act (SOX)...........................................................................................8

State Human Rights Law ............................................................................................1

**Rules**

CPLR § 7515...................................................................................... *passim*

CPLR § 7515(a)(2) .....................................................................................12

CPLR § 7515(b)(i) .....................................................................................12

CPLR § 7515(b)(i) .................................................................................12, 13

CPLR § 7515(b)(iii) ...............................................................................12, 13

I.  **INTRODUCTION**

Plaintiff, a former employee of Morgan Stanley & Co. LLC, seeks to assert claims for race, national origin, religious, and sexual orientation discrimination, sexual harassment, and retaliation, against two Morgan Stanley entities and seven individual employees of Morgan Stanley, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, the New York State Human Rights Law, and the New York City Human Rights Law.  Plaintiff also asserts tort claims, including for assault and battery, sexual abuse, violation of New York's Gender-Motivated Violence Protection Act, and intentional and negligent infliction of emotional distress.

At the time of his hire in July 2017, Plaintiff entered into a valid and binding arbitration agreement in which he agreed to arbitrate "any and all claims or disputes between you and Morgan Stanley or any of its current, former, and future … employees, agents, [and] managers, … based on, arising out of, or which arose out of or in any way relate to [his] employment … or the termination thereof … includ[ing] … tort [] and other common law claims … statutory discrimination, harassment and retaliation claims, and claims … under, based on, or relating to any federal, state or local … statute ...."  Morgan Stanley's CARE[1] Arbitration Program Arbitration Agreement (hereinafter "Arbitration Agreement") ¶ 2 (attached as Exhibit B to the Declaration of John T. Brennan).

Pursuant to the parties' Stipulation to narrow the issues for this motion, Plaintiff admits that he "accepted the terms and conditions set forth in the Arbitration Agreement," and that it is enforceable against him except "as to his claims of sexual harassment," which he challenges solely on the grounds of a New York law passed last year.  New York CPLR § 7515.  Stipulation and Proposed Order ¶ 7 (Dkt. No. 34-1) ("Stipulation").  Therefore, as to all of Plaintiff's claims

---

[1] Convenient Access to Resolution for Employees ("CARE").

*other than* his claims for sexual harassment, it is undisputed that he should be compelled to arbitrate those claims, and an order compelling arbitration of those claims should be entered. Stipulation ¶¶ 1-5, 7.

With respect to Plaintiff's claims for sexual harassment, Plaintiff concedes that the parties formed a valid Arbitration Agreement that would be enforceable as to such claims "except that Plaintiff contends that the Arbitration Agreement has been declared null and void or unenforceable as to his claims of sexual harassment by CPLR § 7515, as of July 11, 2018." As such, unless Plaintiff's sexual harassment claims are not arbitrable due to CPLR § 7515, Plaintiff also must arbitrate those claims.

Plaintiff's challenge to the arbitrability of his sexual harassment claims under CPLR § 7515 fails for several reasons. Initially, the question of whether Plaintiff's sexual harassment claims are arbitrable is a question that must be decided by the arbitrator rather than this Court under the express terms of the Arbitration Agreement and controlling Supreme Court and Second Circuit authority. As such, in addition to compelling all of Plaintiff's non-sexual harassment claims to arbitration, the Court should compel Plaintiff to arbitrate the issue of whether his sexual harassment claims are arbitrable under the Arbitration Agreement.

To the extent the Court somehow reaches that issue, however, it should rule that Plaintiff's sexual harassment claims are arbitrable notwithstanding CPLR § 7515. First, CPLR § 7515 by its terms only applies to arbitration agreements entered into after its effective date of July 11, 2018, and does not apply retroactively to the Arbitration Agreement at issue here, which was entered into a year earlier. Second, on its face, CPLR § 7515 only applies to the extent not inconsistent with federal law, and here, the Federal Arbitration Act ("FAA") applies and requires enforcement of the Arbitration Agreement. Finally, to the extent CPLR § 7515 purports to

2

invalidate the Arbitration Agreement notwithstanding the arguments above, it is preempted by the FAA.

For these reasons, as discussed in more detail below, Defendants respectfully request that the Court compel Plaintiff to arbitrate the question of arbitrability of his sexual harassment claims, and the merits of his remaining claims, and stay this action pending the completion of the arbitration pursuant to Section 4 of the FAA.  9 U.S.C. § 4.

## II.    FACTUAL BACKGROUND

Plaintiff was hired in July 2017 by Morgan Stanley & Co LLC as a Trading Associate in the Institutional Securities Group Product Operations Division.  *See* Complaint ¶¶ 10, 18; *see also* Plaintiff's offer letter, signed June 5, 2017 ("Offer Letter") (attached as Ex. A to the Brennan Decl.).

The parties agree that Plaintiff signed the Offer Letter with Morgan Stanley on June 5, 2017, that the Offer Letter incorporated by reference Morgan Stanley's "Arbitration Agreement," that Plaintiff "accepted the terms and conditions set forth in the Arbitration Agreement," that "the Arbitration Agreement would be enforceable against Plaintiff except that Plaintiff contends that the Arbitration Agreement has been declared null and void or unenforceable as to his claims of sexual harassment by CPLR § 7515, as of July 11, 2018," and that "Plaintiff does not otherwise challenge the enforceability of the Arbitration Agreement."  Stipulation ¶¶ 3, 4, 7.  By accepting the terms and conditions of the Arbitration Agreement, Plaintiff agreed that "This Arbitration Agreement, including the Waivers set forth in paragraph 4 of this Arbitration Agreement, shall be governed by and interpreted in accordance with the Federal Arbitration Act ('FAA')."  Arbitration Agreement ¶ 1.  Plaintiff also agreed that "any and all … statutory discrimination, harassment and retaliation claims, and claims under … any federal, state or local

… statute … including … Title VII … and any other federal, state or local … discrimination or employment law … or common law claims or causes of action" would be "resolved by final and binding arbitration as set forth in this Arbitration Agreement."  Arbitration Agreement ¶ 2. Plaintiff further agreed to arbitrate his claims against Morgan Stanley's "current, former, and future … employees, agents, [and] managers."  *Id.*  All of the claims asserted in the Complaint fall squarely within the claims covered by the Arbitration Agreement.

Moreover, the Arbitration Agreement provides that the parties are required to arbitrate "any and all . . . disputes . . . based on, arising out of, or which arose out of or in any way relate to your employment . . . with Morgan Stanley," and that "[a]ny issue concerning arbitrability of a particular issue or claim pursuant to this Arbitration Agreement . . . must be resolved by the arbitrator, not the court. . . . ."  Arbitration Agreement ¶¶ 2, 4.  In addition, the Arbitration Agreement provides that unless the claim will be arbitrated at FINRA,[2] "then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures . . . except as specified" in the Arbitration Agreement.  Arbitration Agreement ¶ 5(a)(i).  As noted, Rule 11 of the JAMS Employment Arbitration Rules and Procedures provides that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator."

---

[2]  There is no allegation that Plaintiff's claims are subject to FINRA arbitration.

III.    **ARGUMENT**

    A.    **The Federal Arbitration Act and Supreme Court Authority Require the Court to Enforce The Parties' Arbitration Agreement.**

The Arbitration Agreement is governed by the FAA.  Arbitration Agreement ¶1.  *See also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.").

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Under FAA Section 2, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The Federal Arbitration Act reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'"  *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  The FAA, and the strong federal policy favoring arbitration that it embodies, requires courts to "rigorously enforce agreements to arbitrate."  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

FAA Section 4 provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Where, as here, a valid arbitration agreement exists that covers the dispute at issue, a district court must compel arbitration of the dispute.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for

5

the exercise of discretion by a district court").

**B.     The Court Should Compel Arbitration And Stay This Case.**

In determining whether a dispute is arbitrable, a court must resolve the following questions: (1) whether there exists a valid agreement to arbitrate; and (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.  *See Lewis Trees Serv., Inc. v. Lucent Techs. Inc.*, 239 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2002) (abrogated on other grounds) (citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75 (2d Cir. 1998) (abrogated on other grounds)).  In resolving these questions, "courts must 'construe arbitration clauses as broadly as possible,' and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) ("The FAA embodies the 'liberal federal policy favoring arbitration agreements' and 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'").  The federal "presumption of arbitrability" requires that arbitration be compelled unless it may be said with "positive assurance" that the parties' agreement "is not susceptible of an interpretation that covers … the dispute."  *U.S.W.A. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

**1.     It Is Undisputed That Plaintiff Entered Into A Valid And Enforceable Arbitration Agreement Requiring Arbitration Of All Of His Claims, Except That Plaintiff Challenges The Arbitrability Of His Sexual Harassment Claims.**

It is undisputed that Plaintiff "accepted the terms and conditions set forth in the Arbitration Agreement," that "the Arbitration Agreement would be enforceable against Plaintiff except that Plaintiff contends that the Arbitration Agreement has been declared null and void or unenforceable as to his claims of sexual harassment by CPLR § 7515, as of July 11, 2018," and

6

that "Plaintiff does not otherwise challenge the enforceability of the Arbitration Agreement." Stipulation ¶¶ 4, 7.  The scope of the Arbitration Agreement indisputably covers each of Plaintiff's claims.  Arbitration Agreement ¶ 2.  As such, all of Plaintiff's claims other than his sexual harassment claims indisputably should be compelled to arbitration.  This includes all of Plaintiff's causes of action, except for the portions of the First, Fifth, Seventh, and Eighth Causes of Action that can be considered to assert a claim for sexual harassment.

> **2.      The Court Should Compel The Question Of Whether Plaintiff's Sexual Harassment Claims Are Arbitrable To Arbitration Pursuant To The Parties' Express Agreement.**

The issue of whether Plaintiff's sexual harassment claims are arbitrable must be decided by the arbitrator, pursuant to the terms of the Arbitration Agreement.  The Supreme Court has recognized that a clause within an arbitration agreement delegating disputes as to the enforceability of an arbitration agreement (called a "delegation provision") is itself an agreement to arbitrate that must be enforced under the FAA.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").  There must be a "clear and unmistakable" agreement to arbitrate such issues.  *Id.* at 69 n.1 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The Supreme Court in *Rent-A-Center* required arbitration of the employee's argument that the doctrine of unconscionability invalidated an otherwise proper arbitration agreement.  *Id.* at 70-71.  *See also South Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assurance Co.*, 840 F.3d 138, 146 (3d Cir. 2016) (holding that an arbitrator is to decide whether an arbitration provision is rendered

unenforceable by a Nebraska statute because of the "clear and comprehensive" language of the arbitration provision).

In *Alliance Bernstein Investments Research & Mgmt., Inc. v. Schaffran,* 445 F.3d 121 (2d Cir. 2006), a former employee entered into a valid arbitration agreement pursuant to the NASD (now FINRA) Code. *Id.* at 123. A former employee pursued claims in arbitration for retaliation under the Sarbanes-Oxley Act (SOX) and state law under the agreement and the employer filed an action in court to require the former employee to litigate his claims in court. *Id.* The parties' agreement required arbitration of "any dispute, claim or controversy that may arise between me and my firm … that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD] as may be amended from time to time." *Id.* NASD rules, however, did not require arbitration of an "employment discrimination" claim, and Alliance Bernstein argued that the SOX claim was an "employment discrimination" claim excepted from the arbitration requirement. *Id.* at 124. The NASD rules also provided, however, that "[t]he arbitrators shall be empowered to interpret and determine the applicability of all provisions under the Code . . . ." *Id.* The Second Circuit held that under this provision, it was for an arbitrator, not the court, to decide the question of whether the former employee's SOX claim was subject to arbitration. *Id.* at 126-27. *See also Bell v. Cendant Corp.*, 293 F.3d 563, 565 (2d Cir. 2002) (holding that the language of the arbitration agreement, stating "[a]ny controversy arising in connection with or relating to this Agreement…shall be determined and settled by arbitration," clearly and unmistakably demonstrates that the parties intended the arbitrator to determine the waiver issue); *Banus v. Citigroup Glob. Markets, Inc.*, No. 09-7128 (LAK), 2010 WL 1643780, *10 (S.D.N.Y. Apr. 23, 2010), *aff'd*, 422 F. App'x 53 (2d Cir. 2011) (holding that the question of arbitrability of

8

a particular claim was for the arbitrator to decide, where the parties had agreed that such disputes must be submitted to arbitration).

Morgan Stanley's Arbitration Agreement clearly and unmistakably requires arbitration of whether Plaintiff's sexual harassment claims are arbitrable.  The Arbitration Agreement requires arbitration of "any and all . . . disputes between you and Morgan Stanley . . . based on, arising out of, or which arose out of or in any way relate to your employment . . . with Morgan Stanley." Arbitration Agreement ¶ 4.  It further requires that "***[a]ny issue concerning arbitrability of a particular issue or claim*** pursuant to this Arbitration Agreement . . . must be resolved by the arbitrator, not the court." *Id.* (emphasis added).  Finally, the Arbitration Agreement incorporates the JAMS Employment Arbitration Rules and Procedures, Arbitration Agreement ¶ 5(a)(i), which provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator."  Rule 11, JAMS Employment Arbitration Rules and Procedures.[3]

Plaintiff does not dispute the validity of these provisions – only the provision in the Arbitration Agreement requiring arbitration of his sexual harassment claims, and he challenges that provision solely on the basis of New York CPLR § 7515.  Stipulation ¶ 7.  As such, under

---

[3]  "[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013) (finding that the parties' incorporation of JAMS rules requiring arbitration of "jurisdictional and arbitrability disputes" evidenced a clear and unmistakable agreement to delegate issues of arbitrability to the arbitrator) (quoting *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that arbitration rule providing arbitrator "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" delegated arbitrability questions to arbitrator) (internal quotation marks omitted)).

controlling Supreme Court and Second Circuit authority, Plaintiff is required to arbitrate the issue of whether his sexual harassment claims are arbitrable. *Rent-A-Center*, 561 U.S. at 69-70; *Alliance Bernstein*, 445 F.3d at 126-27.

### C.   To The Extent the Court Addresses The Question, It Should Find That Plaintiff's Sexual Harassment Claims Are Arbitrable.

To the extent the Court somehow reaches the question, it should find that Plaintiff's sexual harassment claims are arbitrable notwithstanding CPLR § 7515 because (1) the law does not apply to arbitration agreements entered into prior to the enactment of the law; (2) the law does not apply where it is inconsistent with federal law, and the law is inconsistent with the FAA; and (3) to the extent the law applies to the Arbitration Agreement, it is preempted by the FAA.

CPLR § 7515 became effective on July 11, 2018.  The law provides that, except where inconsistent with federal law, Section 7515 prohibits contracts formed after the effective date from requiring mandatory arbitration of sexual harassment claims, and such prohibited arbitration clauses are null and void.  The law provides, in relevant part, as follows:

(a)   Definitions. As used in this section:

* * * * *

2. The term "prohibited clause" shall mean any clause or provision in any contract which requires as a condition of the enforcement of the contract or obtaining remedies under the contract that the parties submit to *mandatory arbitration to resolve any allegation or claim of an unlawful discriminatory practice of sexual harassment.*

* * * * *

(b)   (i) Prohibition. *Except where inconsistent with federal law, no written contract, entered into on or after the effective date of this section shall contain a prohibited clause* as defined in paragraph two of subdivision (a) of this section.

(ii) Exceptions. Nothing contained in this section shall be construed to impair or prohibit an employer from incorporating a non-prohibited clause or other mandatory arbitration provision within such contract, that the parties agree upon.

(iii) Mandatory arbitration clause null and void. Except where inconsistent with federal law, the provisions of such prohibited clause as defined in paragraph two of subdivision (a) of this section shall be null and void. The inclusion of such clause in a written contract shall not serve to impair the enforceability of any other provision of such contract.

* * * * *

CPLR § 7515 (emphasis added).

### 1.    CPLR § 7515 Does Not Apply Retroactively.

The "presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). A court will not give legislation retroactive effect "'unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature.'" *Id.* at 272 (quoting *Chew Heong v. United States*, 112 U.S. 536, 559 (1884)). *See also Jacobus v. Colgate*, 217 N.Y. 235, 240 (1916) (Cardozo, J.) ("The general rule is that statutes are to be construed as prospective only . . . . It takes a clear expression of the legislative purpose to justify a retroactive application[.]"). "The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Landgraf*, 511 U.S. at 271.

Here, the presumption against retroactivity applies because Plaintiff seeks to use CPLR § 7515 to defeat Defendants' contractual right to arbitrate his sexual harassment claims under the Arbitration Agreement, a contract formed a year prior to the enactment of CPLR § 7515. Moreover, the presumption against retroactivity is not overcome by any clear language in CPLR

11

§ 7515 that leaves no doubt that the statute was intended to apply retroactively.  To the contrary, the statute specifically states that "no written contract, *entered into on or after the effective date of this section* shall contain a prohibited clause . . . ."  CPLR § 7515(b)(i) (emphasis added).  It is undisputed that the parties' Arbitration Agreement in this case was entered into a year **before** the New York law became effective on July 11, 2018.  As a result, CPLR § 7515 does not apply to the Arbitration Agreement formed a year before the passage of CPLR § 7515.

> **2.    CPLR § 7515 Does Not Apply To The Arbitration Agreement Because That Law Is Inconsistent with the FAA.**

On its face, CPLR § 7515 only applies where it would not be inconsistent with federal law.  CPLR § 7515(b)(i) and (iii).  The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The New York law, by contrast, purports to preclude or render null and void mandatory agreements to arbitrate sex harassment claims.  CPLR § 7515(a)(2).  As such, CPLR § 7515 is "inconsistent with federal law" and, on its face, does not apply to the Arbitration Agreement at issue here.

Nor does CPLR § 7515 provide "grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  On its face, CPLR § 7515 does not apply to "any contract" but singles out arbitration agreements for disfavor.  CPLR § 7515(a)(2).  Such grounds do not fit within the "savings clause" under FAA Section 2.  *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (holding that even if the National Labor Relations Act rendered agreements with class waivers "illegal," it was insufficient to invalidate an arbitration agreement because it was not a doctrine that applied to "any contract").

### 3. To The Extent CPLR § 7515 Applies To The Arbitration Agreement, It Is Preempted By The FAA.

To the extent that CPLR § 7515 applies to the Arbitration Agreement, it is preempted by the FAA. Congress, in passing the FAA, "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984). "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility v. Concepcion*, 563 U.S. 333, 341 (2011). That is exactly what CPLR § 7515 purports to do – prohibit outright the arbitration of a particular type of claim, sexual harassment claims – and it is preempted by the FAA. *See also Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (New York rule that required arbitration agreements to be proven with a heightened "express, unequivocal agreement" standard was preempted by the FAA) (quotations omitted).

As such, by its express terms, CPLR § 7515 does not apply to the Arbitration Agreement because it is "inconsistent with federal law." CPLR § 7515(b)(i), (iii). Alternatively, to the extent it applies, it is preempted by the FAA under controlling Supreme Court and Second Circuit authority. *Concepcion*, 563 U.S. at 341; *Progressive Cas. Ins. Co.*, 991 F.2d at 46.[4]

---

[4] Also, with respect to Plaintiff's Title VII claims, CPLR § 7515 conflicts with, and is preempted by, Title VII. In the statute itself, Title VII expressly encourages arbitration of Title VII disputes. *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 204 (2d Cir. 1999) (enforcing mandatory arbitration of Title VII claim because "relevant text in Title VII states that '[w]here appropriate and to the extent authorized by law, the use of ... arbitration[ ] is encouraged to resolve disputes'"). "It follows that barring the application of mandatory arbitration agreements to Title VII claims would conflict with the express statutory term 'encouraged' in § 118." *Id.* at 205.

13

**D.**      **The Court Should Stay These Proceedings.**

Because all of Plaintiff's claims should be compelled to arbitration, the Court should stay these proceedings pending the resolution of the arbitration.  *Katz v. Cellco Partnership*, 794 F.3d 341, 344 (2d Cir. 2015) (Section 3 of the FAA mandates that the Court issue a stay of proceedings when "all of the claims in an action have been referred to arbitration" and a stay is requested).

**IV.    CONCLUSION**

Plaintiff's claims should be compelled to arbitration because (1) it is undisputed that Plaintiff is required to arbitrate all of his claims other than his sexual harassment claims, and (2) his challenge to the arbitrability of his sexual harassment claims (i) must be decided by an arbitrator, or, alternatively (ii) is without merit because CPLR § 7515 does not apply to an arbitration agreement formed a year before its enactment, and it is inconsistent with, and preempted by, the FAA.

For all of the foregoing reasons, Defendants respectfully request that the Court compel Plaintiff to arbitration and stay these proceedings.

Dated:  March 19, 2019                    Respectfully submitted,

                                          MORGAN, LEWIS & BOCKIUS LLP

                                          By: /s/   Sam S. Shaulson
                                              Sam S. Shaulson (NY ID  2611457)
                                              Thomas A. Linthorst (NY ID 3991437)
                                              Kimberley E. Lunetta (NY ID 4421301)

                                              MORGAN, LEWIS & BOCKIUS, LLP
                                              101 Park Avenue
                                              New York, NY 10178-0060
                                              Tel.: 212-309-6000
                                              Fax: 212-309-6001
                                              sam.shaulson@morganlewis.com
                                              thomas.linthorst@morganlewis.com
                                              kimberley.lunetta@morganlewis.com

                                              *Attorneys for Defendants*

## <u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on March 19, 2019, via the Court's ECF/CM system.

/s/<i>Kimberley E. Lunetta</i>
Kimberley E. Lunetta