UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MAHMOUD LATIF,

                  Plaintiff,                  Civil Case No: 18-cv-11528

   -against-

MORGAN STANLEY & CO. LLC,
MORGAN STANLEY SERVICES GROUP INC.,
CARMEN GOMEZ, individually,
LILY CHAN, individually,
JACQUELINE LUCAS, individually,
BRIAN DERBY, individually,
LISA SWEBURG individually,
LAUREN KEIGLER, individually, and
MICHAEL GREY, individually,


                      Defendants.
-------------------------------------------------------X



**PLAINTIFF'S MEMORANDUM OF LAW AND AFFIRMATION IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**



**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*
Abraham Z. Melamed, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760

## TABLE OF CONTENTS

**ATTORNEY AFFIRMATION** …………………………………………………………...1

**PRELIMINARY STATEMENT** …………………………………………………………...1

**STATEMENT OF MATERIAL FACTS** ……………………………………………………..2

**ARGUMENT** …………………………………………………………………………………3

   **I.**   **THE ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE IT REQUIRES THE ARBITRATION OF SEXUAL HARASSMENT CLAIMS AND IS TEHREFORE NULL AND VOID UNDER N.Y. C.P.L.R. 7515(b)(iii)**………………………………………………………………………..3

  **II.**   **THE FAA DOES NOT PROHIBIT OR PREEMPT NEW YOR STATE ASSEMBLY BILL S07507C, AS CODIFIED IN N.Y. C.P.L.R. 7515, BECAUSE IT DOES NOT PLACE ARBITRATION AGREEMENTS ON UNEQUAL FOOTING WITH OTHER CONTRACTS AND DOES NOT DISFAVOR ARBITRATION AGREEMENTS OVERALL OR INTERFERE WITH THE ENFORCMENT OF PRIVATE ARBITRATION AGREEMENTS IN GENERAL**……………………...10

 **III.**   **THE ISSUE OF WHETHER OR NOT THE PRESENT CLAIMS ARE SUBJECT TO ARBITRATION IS ENTIRELY WITHIN THE COURT'S JURISDICTION, AND IS NOT A QUESTION RESERVED FOR AN ARBITRATOR**……………...16

**CONCLUSION** ……………………………………………………..………………………18

## TABLE OF AUTHORITIES

CASES

*Allied-Bruce,* 513 U.S., at 281, 115 S.Ct., at 843……………………………………………..11

*Concepcion*, 131 S.Ct. at 1745-46…………………………………………………10, 11, 15

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987)…………………………..6

*Chanchani v. Salomon/Smith Barney, Inc.*, No. 99 Civ. 9219, 2001 WL 204214, at 2 (S.D.N.Y. Mar. 1, 2001)………………………………………………………………………………..10

*Wright v. SFX Entm't Inc.*, No. 00 Civ. 5354, 2001 WL 103433, at 2 (S.D.N.Y. Feb 7, 2001)…10

*Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 302, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) ……………………………………………………………………………………11

*Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 719 (9th Cir. 2012)……………………15, 16

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)………………………………………………………………………11, 14

*Ramos v. Superior Court*, 28 Cal. App. 5th 1042, 1055, 239 Cal. Rptr. 3d 679, 692 (Ct. App. 2018), *as modified* (Nov. 28, 2018), *review denied* (Feb. 13, 2019)………………….............11

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 434 (9th Cir. 2015…...11, 14

*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1150, 140 Cal.Rptr.3d 492…11

*Thomson–CSF S.A. v. American Arbitration Ass'n*., 64 F.3d 773, 776–77 (2d Cir.1995)……….10

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474 (1989)……………………………………………………………………………………………10

*Wright v. SFX Entm't Inc.*, No. 00 Civ. 5354, 2001 WL 103433, at 2 (S.D.N.Y. Feb 7, 2001)…16


STATUTES

9 U.S.C. *§* 2………………………………………………………………..1, 10, 11, 14, 16

42 U.S.C. § 1981…………………………………………………………………………..5

N.Y. C.P.L.R. 7515…………………………………1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 14, 15, 16, 17, 18

New York State Assembly Bill S07507C…………………………………1, 4, 8, 9, 11, 12, 13, 14

Title VII of the Civil Rights Act of 1964……………………………………………………6

## ATTORNEY AFFIRMATION

I, Abraham Z. Melamed, Esq., am an attorney at the Derek Smith Law Group, PLLC, counsel for Plaintiff, Mahmoud Latif, in the above-referenced case.  I respectfully submit this Memorandum of Law and Affirmation in opposition to the Defendants' motion to compel arbitration and stay this action (Dkt. 35), and affirm the following under the penalty of perjury.

## PRELIMINARY STATEMENT

This case involves, *inter alia*, severe sexual assault and harassment perpetrated against Plaintiff by the Defendants, as well as retaliation and wrongful termination of Plaintiff.  Yet Defendants are attempting to enforce a mandatory arbitration clause in this sexual harassment lawsuit, something that has been recently declared "null and void" as a matter of policy by the New York State Legislature. Bill S7505C (April 12, 2018), codified in N.Y. C.P.L.R. 7515(b)(iii).  In the current social environment where victims of sexual harassment are finally bringing the abuse they have suffered to light, the State Legislature passed this law to prevent the exact type of allegations in the complaint from being covered up and hidden.  Moreover, N.Y. C.P.L.R. 7515 demonstrates a general legislative intent to protect victims of sexual harassment as opposed to a specific intent to single out arbitration for singular treatment, and the Federal Arbitration Act ("FAA") itself states that it applies except "upon such grounds as exist at law or *in equity for the revocation of any contract." (emphasis added) 9 U.S.C. § 2.  Specifically, the* bundle of provisions in Bill S7505C that were signed into law include a number of provisions relating to sexual harassment in a number of types of contracts, including public contracts, and thus does not single out arbitration agreements for less favorable treatment than other contracts. Indeed, if the Defendants were successful in enforcing arbitration in the present case, then

arbitration agreements would actually be placed on a higher footing than other contracts, something that Congress clearly did not intend in enacting the FAA.  The New York State Legislature has a strong state interest in protecting these victims of sexual harassment.  If Defendants' Motion to Compel Arbitration and Stay Litigation were to be granted, N.Y. C.P.L.R. 7515 would be rendered toothless and victims of sexual harassment would be forced back into the shadows.  As such, the Defendants motion to compel arbitration and stay these proceedings should be denied.

<u>**STATEMENT OF MATERIAL FACTS**</u>

In the present case, it is not disputed that Plaintiff signed an Offer Letter with Morgan Stanley on June 5, 2017, which incorporated by reference Morgan Stanley's "Arbitration Agreement," and that Plaintiff "accepted the terms and conditions set forth in the Arbitration Agreement," which would ordinarily require that Plaintiff arbitrate the claims alleged in his First Amended Complaint ("FAC"), except that the Arbitration Agreement has been declared null and void and unenforceable as to Claimant's claims of sexual harassment by NYCPLR § 7515, as of July 11, 2018.  *Id.*

It is also undisputed that the arbitration agreement at issue in the present case is the type of arbitration agreement that NYCPLR § 7515 was intended to prohibit, and is an arbitration agreement under the meaning of NYCPLR § 7515(a)(2).  This is because the arbitration agreement at issue would require Plaintiff to arbitrate extremely egregious acts of sexual harassment, including a severe sexual assault.  *See* FAC generally.  This is precisely the type of arbitration agreement that NYCPLR § 7515 was enacted to prohibit.  It is also undisputed that if

NYCPLR § 7515 is not inconsistent with or preempted by the FAA, it is enforceable in the present case and would control.

Additionally, the Defendants' CARE provision states, "[i]f a court of competent jurisdiction determines that a particular provision of this Guidebook is invalid, unenforceable or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions."[1]  Moreover, Plaintiff was never provided with a copy of the JAMS rules, including Rule 11, which does not even provide a link to the JAMS rules (but merely a link to the JAMS home page in a footnote). See Def. Exhibit B.

## ARGUMENT

I.   **THE ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE IT REQUIRES THE ARBITRATION OF SEXUAL HARASSMENT CLAIMS AND IS TEHREFORE NULL AND VOID UNDER N.Y. C.P.L.R. 7515(b)(iii).**

N.Y. C.P.L.R. 7515(b)(iii) directly makes mandatory arbitration agreements in sexual harassment cases null and void.  This is because there is a strong state interest in prohibiting mandatory arbitration of sexual harassment claims. Arbitration is a secret process that shields wrongdoing from public view.  This is particularly harmful in sexual harassments cases, because victims of sexual harassment often fear facing stigma, victim blaming, and re-traumatization.  By declaring mandatory arbitration clauses in sexual harassment cases null and void, the New York Legislature was taking an important step to allow victims of sexual harassment to come forward and make their accusations public in order to combat sexual harassment in the workplace, and

---

[1] This language is taken from a copy of a CARE provision for another employee that worked for Defendants close in time to Plaintiff, which should uniformly be consistent with Plaintiff's CARE provision.  However, due to short notice, Defendants were unable to obtain a copy of the CARE provision in effect at the time of Plaintiff's employment.  In the unlikely case that the Defendants obtain a copy of Plaintiff's CARE provision and this language is not present, Plaintiff will intend to supplement this submission.

there is a powerful state interest in doing so.  A mandatory arbitration agreement in a sexual harassment case is the exact situation presently before the Court.  Therefore, the arbitration agreement in question here should be considered null and void, and the intent of the New York State Legislature to protect victims of sexual harassment should be honored.

On April 12, 2018, New York Governor Andrew Cuomo signed into law New York State Assembly Bill S07507C,[2] which related primarily to a number of changes to existing laws in New York to account for protection of sexual harassment victims.  These provisions included a requirement that all bids submitted to the state of New York or any agency or department of the state must contain a certification concerning sexual harassment (Subpart A); prohibits mandatory arbitration clauses of sexual harassment claims (Subpart B); relates to reimbursement of funds paid by state and public agencies and entities for the payment of awards adjudicated in sexual harassment claims (Subpart C); relates to nondisclosure agreements in settlement agreements of sexual harassment claims(Subpart D); establishes a model policy regarding the prevention of sexual harassment and a model training program to prevent sexual harassment in the workplace (Subpart E); relates to sexual harassment relating to non-employees (Subpart F) (Part KK).

The primary section at issue in the present case is Section 1, Part KK, Subpart B, which amended the N.Y. C.P.L.R. to add a new section, N.Y. C.P.L.R. 7515.  This section, titled "Mandatory arbitration clauses; prohibited" provides, in relevant part:

(a) Definitions.  As used in this section:

1. The term "employer" shall have the same meaning as provided in subdivision five of section two hundred ninety-two of the executive law.

2. The term "prohibited clause" shall mean any clause or provision in any contract which requires as a condition of the enforcement of the contract or obtaining remedies under the contract that the parties submit to mandatory

---

[2] https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=S07507&term=2017&Actions=Y&Text=Y

arbitration to resolve any allegation or claim of an unlawful discriminatory practice of sexual harassment.

3. The term "mandatory arbitration clause" shall mean a term or provision contained in a written contract which requires the parties to such contract to submit any matter thereafter arising under such contract to arbitration prior to the commencement of any legal action to enforce the provisions of such contract and which also further provides language to the effect that the facts found or determination made by the arbitrator or panel of arbitrators in its application to a party alleging an unlawful discriminatory practice based on sexual harassment shall be final and not subject to independent court review.

4. The term "arbitration" shall mean the use of a decision making forum conducted by an arbitrator or panel of arbitrators within the meaning and subject to the provisions of article seventy-five of the civil practice law and rules.

(b) (i) Prohibition. Except where inconsistent with federal law, no written contract, entered into on or after the effective date of this section shall contain a prohibited clause as defined in paragraph two of subdivision (a) of this section.

(ii) Exceptions. Nothing contained in this section shall be construed to impair or prohibit an employer from incorporating a non-prohibited clause or other mandatory arbitration provision within such contact, that the parties agreed upon.

(iii) Mandatory arbitration clause null and void. Except where inconsistent with federal law, the provisions of such prohibited clause as defined in paragraph two of subdivision (a) of this section shall be null and void. The inclusion of such clause in a written contract shall not serve to impair the enforceability of any other provision of such contract.

(N.Y. C.P.L.R. 7515)[3]

In the present case, it is undisputed-nor indeed could it be disputed-that the Defendants qualify as an employer within the meaning of Section (a)(1). Additionally, Plaintiff's primary claims in the present case are clearly sexual harassment claims. See FAC generally. Specifically, of the sixteen causes of action that Plaintiff brings, only the Third Cause of Action under 42 U.S.C. § 1981 does not, at least in part, to Plaintiff's sexual harassment claims. A majority of the factual allegations in the FAC relate to the sexual assault that Plaintiff suffered at

---

[3] https://www.nysenate.gov/legislation/laws/CVP/7515

the hands of his supervisor while working for Defendants, as well as the sexual comments Plaintiff's supervisor and co-workers made directed at Plaintiff, and the numerous written complaints Plaintiff made regarding this sexual harassment and the retaliation and wrongful termination he suffered as a result of those complaints.  See FAC generally.  So, while Plaintiff also alleges facts and asserts causes of action relating to race, religious and national origin discrimination, it is certain that his FAC includes significant sexual harassment claims.

It is also undisputed that Plaintiff's offer letter included an arbitration agreement, and incorporated by reference a number of more expansive arbitration rules, including CARE as well as the JAMS rules for arbitration of employment cases.  This arbitration agreement clearly requires that Plaintiff submit all claims for sexual harassment, including those arising under Title 7 and New York State and City law, as alleged in this case, to mandatory and binding arbitration.  See Def. Exhibits A and B.  This provision clearly is a prohibited clause under section (a)(2), as it includes a mandatory arbitration agreement as defined in section (a)(3) and (a)(4).  See Def. Exhibits A and B.  With this in mind, it is clear that section (b)(i) prohibits the inclusion of an arbitration agreement such as Plaintiff's from being included in any future contract created and entered into after the effective date of N.Y. C.P.L.R. 7515, July 11, 2018.

The threshold question then is whether or not section (b)(iii), which is a distinct subsection, was not incorporated into subsection (b)(i), and intentionally does not specify that it only apply as of the effective date of N.Y. C.P.L.R. 7515, in fact applies retroactively to all contracts entered into prior to the effective date, including Plaintiffs.  Because it is clear, as set forth more fully below, that section (b)(iii) in fact does apply retroactively, N.Y. C.P.L.R. 7515 declares Plaintiff's arbitration agreement as it relates to all of his claims for sexual harassment

and retaliation related to his sexual harassment claims, null and void, *ab initio*, and thus the Defendants' motion to compel arbitration as to these claims should be denied in its entirety.[4]

First, in enacting N.Y. C.P.L.R. 7515 the legislature intentionally separated out section (b) into three distinct subparts; (i) entitled "Prohibition," (ii) entitled "Exceptions," and (iii) entitled "Mandatory arbitration clause null and void."   A plain reading of these three sections indicates that they are not intended to be read in conjunction with each other.   First, and foremost, if the legislature intended the result posited by the Defendants, that Section (b)'s subsections (iii)'s "null and void" provision merely qualifies subsection (i), and indicates that *future* prohibited clauses will be null and void, then the legislature could simply have included such language in subsection (i).   It could simply have read:

> Except where inconsistent with federal law, no written contract, entered into on or after the effective date of this section, shall contain a prohibited clause as defined in paragraph two of subdivision (a) of this section.   ***Any contract entered into on or after the effective date of this section shall be null and void***.   The inclusion of such clause in a written contract shall not serve to impair the enforceability of any other provision of such contract.

Certainly the legislature did not shy away from including two separate sentences in a section, such as it in fact ultimately did in section (iii).   As such, it is clear that the legislature intended section (iii) to be a freestanding section, the plain meaning of which is that any and all prohibited contracts, regardless of when they were entered into, are thus null and void, *ab initio*.

This is further supported by the fact that subsection (i) explicitly states, "no written contract, ***entered into on or after the effective date of this section…***"   The legislature could just as easily have included identical language in subsection (iii), and stated "Except where

---

[4] It is also respectfully submitted that in the interest of judicial economy and avoiding duplicative costs to both parties, the other claims in Plaintiff's FAC also remain before this Court, and not be severed to be litigated separately in an arbitration.   However, to the extent that the Court is so inclined to sever such claims, Plaintiff is fully prepared to litigate those claims in a separate arbitration, which should have no bearing on the arbitrability of his sexual harassment claims which is governed by N.Y. C.P.L.R. 7515.

inconsistent with federal law, the provisions of such prohibited clause as defined in paragraph two of subdivision (a) of this section in any contract ***entered into on or after the effective date of this section*** shall be null and void." Yet, they intentionally chose to leave such language out of subsection (iii) evincing an intent for such clause to apply retroactively, to any prohibited clause in any contract previously entered into, such as Plaintiffs. Moreover, the fact that subsection (iii) repeats the language "Except where inconsistent with federal law" which is already stated at the start of subsection (i), indicates that for clarity's sake the legislature has no issue with repeating language in multiple sections, which it could just as easily have done with the language "***entered into on or after the effective date of this section.***" It also demonstrates that subsection (iii) was not intended to merely qualify subsection (iii), or it would not be necessary to repeat the language of "Except where inconsistent with federal law." Additionally, it is unclear why subsection (i) would require separate language to say that a clause which is expressly prohibited by law, as codified in subsection (i) is null and void. As a matter of law, if such a future clause violates subsection (i) it will be null and void on its face. So the legislature would not need to specify that such a prohibited clause is null and void.

This reading is also supported by a completely different section of Section 1, Part M, subdivision (b), which states in relevant part:

> (b) of this subdivision, excess insurance coverage or equivalent excess coverage purchased for such physician or dentist in accordance with this section for such coverage period shall be cancelled and shall be ***null and void as of the first day on or after*** the commencement of a policy period where the liability for payment pursuant to this subdivision has not been met (emphasis added).

New York State Assembly Bill S07507C.[5]

Here, although it applied to a different type of contract, the legislature used the language "null and void" and offers a definition of when such contract shall be null and void. Thus, it is

---

[5] https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=S07507&term=2017&Actions=Y&Text=Y

clear that the legislature could simply have included a separate qualifying statement relating to the "null and void" language in subsection (iii) of Part KK, if it so chose.  Yet it specifically chose not to, demonstrating that the intent was for this clause to apply retroactively.

Lastly, although not dispositive, the analysis of two separate large defense law firms, Paul, Weiss, Rifkin, Wharton & Garrison LLP and Seyfarth Shaw, LLP, lends further support to the plain English reading of subsection (iii) of Park KK, that the legislature intended for such provision to apply retroactively.  Specifically, Paul Weiss, in an article on its website directed at employers, states in reference to subsection (iii) of Park KK, "In addition, the law makes mandatory arbitration clauses for sexual harassment claims **_in existing contracts null and void_**…" (emphasis added).[6]  Similarly, Seyfarth Shaw, LLP, in a blog post to employers states in relation to subsection (iii) of Park KK, "The law also declares nu**_ll and void clauses in existing contracts_** that mandate arbitration of sexual harassment claims" (emphasis added).  This blog post even recognized the policy purpose of subsection (iii) of Park KK in saying, "many commentators have argued that arbitration clauses have enabled serial harassers to avoid detection by keeping their cases out of the court system in favor of a confidential dispute resolution system."   The blog post goes on to state that, "[t]hose arguments have had traction" citing to a February 2018 letter to the Congressional Leadership, which was signed by the Attorney Generals of all 50 states, calling for legislation to allow victims of sexual harassment to have "access to the courts," free from "the secrecy requirements of arbitration clauses.[7]

As such, it is clear that subsection (iii) of Park KK was clearly intended to apply retroactively, to make any and all prohibited arbitration clauses, such as the one at issue in the

---

[6] https://www.paulweiss.com/practices/litigation/employment/publications/new-anti-sexual-harassment-measures-in-new-york-state-and-new-york-city?id=26408
[7] https://shpr.legislature.ca.gov/sites/shpr.legislature.ca.gov/files/Musell-NAAG%20Letter%20re%20mandatory%20arbitration.pdf

present case, null and void, *ab initio*.  Therefore, the Defendants motion to compel arbitration should be denied in its entirety.


## II.   THE FAA DOES NOT PROHIBIT OR PREEMPT NEW YOR STATE ASSEMBLY BILL S07507C, AS CODIFIED IN N.Y. C.P.L.R. 7515, BECAUSE IT DOES NOT PLACE ARBITRATION AGREEMENTS ON UNEQUAL FOOTING WITH OTHER CONTRACTS AND DOES NOT DISFAVOR ARBITRATION AGREEMENTS OVERALL OR INTERFERE WITH THE ENFORCMENT OF PRIVATE ARBITRATION AGREEMENTS IN GENERAL.

Having established that N.Y. C.P.L.R. 7515(b)(iii) declares the arbitration agreement at issue in the present case null and void, the question is whether or not N.Y. C.P.L.R. 7515 is prohibited by federal law, something that would bar its application by its own language which qualifies "Except where inconsistent with federal law."  This question turns on whether or not N.Y. C.P.L.R. 7515 implicates the Federal Arbitration Act ("FAA"), and if it does, whether or not the FAA conflicts with N.Y. C.P.L.R. 7515, and therefore preempts it, rendering N.Y. C.P.L.R. 7515 toothless, and essentially pointless.

The first question is whether or not N.Y. C.P.L.R. 7515 violates the FAA's policy in favor of arbitration.  It does not.  The FAA's policy in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474 (1989).  When deciding whether to compel arbitration, it is the duty of the court to consider whether a valid agreement to arbitrate exists between the parties. See *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987); *Wright v. SFX Entm't Inc.*, No. 00 Civ. 5354, 2001 WL 103433, at 2 (S.D.N.Y. Feb 7, 2001).  Courts apply generally accepted principles of contract law to determine whether parties have agreed to arbitrate. *See Thomson–CSF S.A. v. American Arbitration Ass'n*., 64 F.3d 773, 776–77 (2d Cir.1995); *Genesco*, 815 F.2d at 845; *Chanchani v. Salomon/Smith Barney, Inc*., No. 99 Civ.

9219, 2001 WL 204214, at 2 (S.D.N.Y. Mar. 1, 2001).   Thus, courts "must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms," *Concepcion*, 131 S.Ct. at 1745-46.   As the Supreme Court has stated, Congress enacted the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 302, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (quoting *Volt,* 489 U.S. at 478, 109 S.Ct. 1248).

However, "[a]s the 'saving clause' in § 2 indicates, the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, ***but not more so***." (emphasis added).  *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 434 (9th Cir. 2015), *citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).   Thus, for example, the FAA provides that generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2, see, *e.g., Allied-Bruce,* 513 U.S., at 281, 115 S.Ct., at 843. Indeed, *Epic Systems* explicitly reaffirmed, like *Concepcion* before it, that the FAA does not preempt the invalidation of arbitration agreements by " ' "generally applicable contract defenses, such as fraud, duress, or unconscionability." ' " *Ramos v. Superior Court*, 28 Cal. App. 5th 1042, 1055, 239 Cal. Rptr. 3d 679, 692 (Ct. App. 2018), *as modified* (Nov. 28, 2018), *review denied* (Feb. 13, 2019), *citing Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1150, 140 Cal.Rptr.3d 492.

In the present case, N.Y. C.P.L.R. 7515 must be read in conjunction with the bundle of provisions in New York State Assembly Bill S07507C,[8] which, as stated above, relate primarily to a number of changes to existing laws in New York to account for protection of sexual

---

[8] https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=S07507&term=2017&Actions=Y&Text=Y

harassment victims.  These provisions include a requirement that all bids submitted to the state of New York or any agency or department of the state must contain a certification concerning sexual harassment (Subpart A); prohibits mandatory arbitration clauses of sexual harassment claims (Subpart B); relates to reimbursement of funds paid by state and public agencies and entities for the payment of awards adjudicated in sexual harassment claims (Subpart C); relates to nondisclosure agreements in settlement agreements of sexual harassment claims (Subpart D); establishes a model policy regarding the prevention of sexual harassment and a model training program to prevent sexual harassment in the workplace (Subpart E); relates to sexual harassment relating to non-employees (Subpart F) (Part KK).

Thus, it is clear that New York State Assembly Bill S07507C itself does not place arbitration agreements on unequal footing to other contract provisions.  Bill S07507C has the purpose and effect of ridding the workplace of sexual harassment.  It accomplishes this by imposing restrictions and affirmative duties in a number of different types of contracts relating to sexual harassment.  For example, Subpart D amends the general obligations law to add a new section, 5-336, which relates to nondisclosure agreements and provides that employers shall not have the authority to include or agree to include in a settlement agreement relating to any claims of sexual harassment a provision that would prevent the disclosure of the underlying facts and circumstances to the claim or action unless the condition of confidentiality is the complainant's preference.  It also sets forth parameters for demonstrating that preference, including that the complainant shall have twenty-one days to consider such term or condition and must memorialize such preference in an agreement signed by all the parties, and shall have at least a seven day revocation period.  *Id.* at subpart D.

Similarly, the first portion of Part KK of New York State Assembly Bill S07507C requires that every bid made to the state or any public department or agency where competitive bidding is required by law rule or regulation, shall contain a statement that by submitting their bid they certify that the bidder has and has implemented a written policy addressing sexual harassment prevention in the workplace and provides annual sexual harassment prevention training to all of its employees. *Id.* Similarly, subpart C states that any state employee who has been subject to a final judgment of personal liability for intentional wrongdoing related to a claim of sexual harassment, must reimburse any state agency or entity that makes a payment to a plaintiff for an adjudicated award based on a claim of sexual harassment for their proportionate share of a judgment that flows from the adjudication, within ninety days of the state agency or entity's payment of such award. *Id.* at subpart C. Subpart E, entitled "prevention of sexual harassment" provides that the department shall consult with the division of human rights to "create and publish a model sexual harassment prevention guidance document and sexual harassment prevention policy that employers may utilize in their adoption of a sexual harassment prevention policy required by this section." *Id.* at subpart E. It also provides that every employer must adopt the model sexual harassment prevention policy promulgated, or establish a sexual harassment prevention policy to prevent sexual harassment that equals or exceeds the minimum standards in the model policy and that such sexual harassment prevention policy shall be provided to all employees in writing. It also requires that every employer utilize the model sexual harassment prevention training program established pursuant to this subdivision, or establish its own training program for employees to prevent sexual harassment equals or exceeds the minimum standards provided by the model training. *Id.*

Subpart F even expands these prevention measures to non-employees.  The provision makes it an unlawful discriminatory practice for an employer to permit sexual harassment of non-employees in its workplace, and states that an employer may be held liable to a non-employee who is a "contractor,  subcontractor,  vendor, consultant  or other person providing services pursuant to a contract in the workplace or who is an employee of such contractor, subcontractor, vendor,  consultant  or  other  person  providing services pursuant to a contract in the workplace" when the employer or its agents or supervisors knew or should have known that the non-employee was subjected to sexual harassment, and failed to take immediate appropriate corrective action.  *Id.* at subpart F.

As such, it is clear that the state law, specifically, Bill S07507C, as signed into law, is not a law that specifically singles out arbitration agreements for disparate treatment from other contracts, but rather a law that takes specific aim at preventing sexual harassment in the workplace, and in doing so, affects numerous types of contracts, not just arbitration agreements for sexual harassment claims.  As such, N.Y. C.P.L.R. 7515 does not even implicate the FAA because it does not single out arbitration agreements for disparate treatment.  It treats arbitration agreements of sexual harassment claims the same as it treats other contracts relating to sexual harassment claims.  In fact, if the Court were to declare the N.Y. C.P.L.R. 7515 portion of this law as preempted by the FAA, yet the provisions above which relate to other types of contract-including prohibiting non-disclosure agreements in sexual harassment cases for example-are still in effect, then it would be putting arbitration agreements on a higher footing than other contracts, a result that Congress certainly did not intend.  *See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 434 (9th Cir. 2015), *citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("As the 'saving clause' in § 2 indicates,

the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, *but not more so*." (emphasis added).   Thus, it is clear that N.Y.C.P.L.R. 7515, as codified in Bill S07507C, does not single out arbitration agreements for disparate treatment, so the FAA is not applicable, and the Defendants motion to compel arbitration should be denied.

Even if the Court were to find that N.Y. C.P.L.R. 7515 implicates the FAA, which Plaintiff respectfully maintains it should not, because N.Y. C.P.L.R. 7515 does not evince a general disfavor for arbitration, and even expressly states as much, it does not violate the FAA's prohibition on state laws that disfavor and interfere with arbitration agreements in general.

For example, in *Concepcion* 131 S.Ct. at 1745-46*,* the Court struck down the *Discover Bank* rule because it was applied in a "***manner that disfavored arbitration overall and interfered with the enforcement of private arbitration agreements in general, thus standing as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress to not disfavor arbitration agreements entirely***" (emphasis added). *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 719 (9th Cir. 2012), *citing Concepcion* 131 S.Ct. at 1745-46.

In the present case, Bill S07507C, as signed into law, does not disfavor arbitration agreements overall or interfere with the enforcement of private arbitration agreements in general. It certainly does not stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress to not disfavor arbitration agreements *entirely*.   To the contrary, N.Y. C.P.L.R. 7515(b) (iii) clearly states, "[n]othing contained in this section shall be construed to impair or prohibit an employer from incorporating a non-prohibited clause or other mandatory arbitration provision within such contract, that the parties agree upon."   Rather, it merely seeks to illuminate sexual harassment claims, which have all too often been swept under the rug of non-public arbitrations, which have less accountability than public access to court.  Thus, N.Y.

C.P.L.R. 7515 does not serve to hinder or prohibit arbitration agreements across the board, and therefore is not prohibited by the FAA, and thus is not an obstacle to the accomplishment and execution of the full purposes and objectives of Congress to not disfavor arbitration agreements *entirely*. *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 719 (9th Cir. 2012), *citing Concepcion* 131 S.Ct. at 1745-46.

Moreover, the FAA itself expressly allows states to exercise their judgment regarding the enforceability of contracts where equitable grounds exist.  The FAA states that it applies except "upon such grounds as exist at law or *in equity* for the revocation of any contract." (emphasis added) 9 U.S.C. § 2.  Therefore, N.Y. C.P.L.R. 7515 should be interpreted as otherwise making mandatory arbitration clauses in sexual harassment cases null and void in equity, as these clauses interfere with substantial state interests.  As such, it is clear that the FAA does not prohibit or preempt N.Y. C.P.L.R. 7515, and the Defendants motion to compel arbitration should be denied.

III.    **THE ISSUE OF WHETHER OR NOT THE PRESENT CLAIMS ARE SUBJECT TO ARBITRATION IS ENTIRELY WITHIN THE COURT'S JURISDICTION, AND IS NOT A QUESTION RESERVED FOR AN ARBITRATOR.**

When deciding whether to compel arbitration, it is the duty of the court to consider whether a valid agreement to arbitrate exists between the parties. See *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987); *Wright v. SFX Entm't Inc.*, No. 00 Civ. 5354, 2001 WL 103433, at 2 (S.D.N.Y. Feb 7, 2001).

In the present case, to the extent that the Court determines that N.Y. C.P.L.R. 7515 declares the Plaintiff's arbitration agreement with respect to his sexual harassment claims null and void, a*b initio*, then any provisions in the now null and void agreement-at least as it relates to Plaintiff's sexual harassment claims-which might require Plaintiff to adjudicate questions of

jurisdiction before an arbitrator are also null and void.  So, as an initial matter, the Defendants argument that such provisions should require an arbitrator to make the decision as to whether Plaintiff's claims belong in court is unavailing.  If the arbitration agreement is null and void as to Plaintiff's sexual harassment claims, which as described above, it is, then all issues relating to sexual harassment claims are reserved for the Court.  In the same vein, Plaintiff's claims for sexual harassment are not in fact "covered claims" because the arbitration agreement as it relates to such claims is null and void as a matter of New York law.  For example, if an arbitration agreement was deemed to be null and void for violating mutual assent, then any provisions within it, including that the arbitrator should determine questions about jurisdiction are also null and void, and rather such a question is reserved for the Court.

Moreover, even the terms of the CARE guidebook and Rule 11 of JAMS employment rules are at the very least ambiguous as to whether the question of whether the arbitration agreement is null and void is reserved for an arbitrator or the Court.  For example, the CARE provision states that "[i]f a court of competent jurisdiction determines that a particular provision of this Guidebook is invalid, unenforceable or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions."  Thus it clearly contemplates the possibility that a court of competent jurisdiction evaluates the question of whether provisions of the agreement, and a fortiori the entire agreement, are unenforceable or void under the applicable law of the particular jurisdiction, as is precisely the case here.   N.Y. C.P.L.R. 7515 declares this agreement null and void, a determination reserved for a court of competent jurisdiction.   Similarly, JAMS Employment Rule 11 only takes effect once an arbitrator is appointed, and explicitly states, "**unless the relevant law requires otherwise**, the Arbitrator has the authority to determine

jurisdiction and arbitrability issues as a preliminary matter." (emphasis added).  Here, the law in fact states otherwise.  N.Y. C.P.L.R. 7515 declares the arbitration agreement null and void.

Finally, if the Court were to accept the Defendants argument that the question of whether N.Y. C.P.L.R. 7515 invalidates arbitration agreements such as the one in the present case is reserved for the arbitrator, it would only serve to further shield perpetrators of sexual harassment from the public eye, a result that is clearly directly contrary to the purpose and intent of N.Y. C.P.L.R. 7515.  Moreover, it is possible that a party would never have access to judicial review of this extremely important issue, because an arbitrator's decision regarding the enforceability of N.Y. C.P.L.R. 7515 would be shielded from judicial review.  This is clearly not a result that the law desires.  As such, the question of whether N.Y. C.P.L.R. 7515 declares the arbitration agreement in the present case null and void is one for the Court to determine, and the Court should deny the Defendants Motion.

## <u>CONCLUSION</u>

For the foregoing reasons it is respectfully submitted that the Defendants' motion to compel arbitration and stay these proceedings should be denied in its entirely, together with such other and further relief as the Court may deem just and proper.


Dated:      May 3, 2019                              Respectfully submitted,
            New York, NY
                                                     **DEREK SMITH LAW GROUP, PLLC**

                                                       /s/ Abe Melamed      

                                                     Abraham Z. Melamed, Esq.
                                                     *Attorney for Plaintiff*
                                                     One Penn Plaza, Suite 4905
                                                     New York, New York 10119
                                                     (212) 587-0760