UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAHMOUD LATIF,<br><br>            Plaintiff,<br><br>  -against-<br><br>MORGAN STANLEY & CO. LLC,<br>MORGAN STANLEY SERVICES GROUP INC.,<br>CARMEN GOMEZ, individually,<br>LILY CHAN, individually,<br>JACQUELINE LUCAS, individually,<br>BRIAN DERBY, individually,<br>LISA SWEBERG individually,<br>LAUREN KEIGLER, individually, and<br>MICHAEL GREY, individually,<br><br>            Defendants. | Civil Case No: 18-cv-11528 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

Sam S. Shaulson (NY ID 2611457)
Thomas A. Linthorst (NY ID 3991437)
Kimberley E. Lunetta (NY ID 4421301)
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178-0060
Tel.: 212-309-6000
Fax: 212-309-6001
sam.shaulson@morganlewis.com
thomas.linthorst@morganlewis.com
kimberley.lunetta@morganlewis.com

*Attorneys for Defendants*

Dated: May 31, 2019

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. CPLR § 7515 Is Inconsistent With, And Preempted By, The Federal Arbitration Act ...................................................................................................... 2

        1. CPLR § 7515 Expressly Disfavors Arbitration Agreements ..................... 3

        2. Plaintiff's Argument That The FAA Only Preempts State Laws That Disfavor Arbitration "In General" Or "Entirely" Is Baseless Under Controlling Supreme Court Authority ............................................. 5

        3. The FAA Does Not Permit States To Refuse To Enforce Arbitration Agreements On Equitable Grounds That Are Not Applicable To "Any Contract" ...................................................................... 6

    B. CPLR § 7515 Does Not Apply Retroactively........................................................ 6

        1. Even Accepting Plaintiff's Construction Of The Statute, It Does Not Expressly Prescribe The Proper Reach Of CPLR § 7515(b)(iii) ........ 8

        2. Application of CPLR § 7515(b)(iii) To The Arbitration Agreement Would Have An Impermissible Retroactive Effect ................................. 10

III. CONCLUSION.............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Enter. Mortg. Acceptance Co., LLC*,
  391 F.3d 401 (2d Cir. 2004) ................................................................................................. 7, 8

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013) .......................................................................................................... 10

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ........................................................................................................ 1, 3, 5

*Chew Heong v. United States*,
  112 U.S. 536 (1884) ................................................................................................................ 7

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
  No. 16-CV-7014, 2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ........................................... 6

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  191 F.3d 198 (2d Cir. 1999) .................................................................................................... 6

*Deutsch v. Catherwood*,
  31 N.Y.2d 487 (N.Y. 1973) ..................................................................................................... 8

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ............................................................................................................ 3

*Gutierrez v. Wells Fargo Bank, NA*,
  704 F.3d 712 (9th Cir. 2012) ............................................................................................... 1, 5

*I.N.S. v. St. Cyr*,
  533 U.S. 289 (2001) ................................................................................................................ 9

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011) .................................................................................................................. 2

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994) .......................................................................................................... 7, 10

*Mathews v. Kidder Peabody & Co.*,
  161 F.3d 156 (3d Cir. 1998) .................................................................................................... 8

*Olde Discount Corp. v. Tupman*,
  1 F.3d 202 (3d Cir. 1993) ...................................................................................................... 10

## TABLE OF AUTHORITIES
(continued)

Page (s)

*Patricia F. v. Guiseppe F.*,
    548 N.Y.S.2d 861, 145 Misc. 2d 1050 (N.Y. Fam. Ct. 1989) ................................................... 9

*Perry v. Thomas*,
    482 U.S. 483 (1987) ............................................................................................................ 4, 5

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ............................................................................................................ 4, 5

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ............................................................................................................. 4, 5, 6

**Statutes**

9 U.S.C. § 2 ........................................................................................................................... 2, 3, 4, 6

C.R. Act of 1991, § 118 ................................................................................................................. 6

Cal. Franchise Inv. Law ................................................................................................................ 4

Cal. Talent Agencies Act ........................................................................................................... 4, 5

Fed. Arbitration Act ............................................................................................................ *Passim*

Nat'l Labor Relations Act .............................................................................................................. 3

Reform Act Title I .......................................................................................................................... 8

Sarbanes-Oxley Act §804 .............................................................................................................. 7

**Other Authorities**

CPLR § 7515 ........................................................................................................................ *Passim*

State Assembly Bill § 07507C ...................................................................................................... 4

I.      **INTRODUCTION**

As demonstrated in Defendants' opening brief and discussed below, this Court should compel Plaintiff to arbitrate his sexual harassment claims pursuant to Morgan Stanley's CARE Arbitration Program Arbitration Agreement ("Arbitration Agreement") for two principal reasons.[1]  First, CPLR § 7515 is inconsistent with and, to the extent CPLR § 7515 is applicable, preempted by, the Federal Arbitration Act ("FAA") because it expressly singles out arbitration agreements for disfavored treatment.  Plaintiff's quixotic arguments – that the anti-arbitration provision is saved because it was enacted as part of a "bundle" of other provisions, that the FAA only preempts state laws that preclude arbitration "in general" or "entirely," and that states have the general power to deny enforcement of arbitration agreements that they deem to be inequitable – are flatly precluded by controlling Supreme Court authority.  In an effort to make it appear that there is Supreme Court authority for Plaintiff's theory that the FAA only preempts state laws that disfavor arbitration "in general" or "entirely," Plaintiff unfortunately goes so far as to manufacture a quote from a case he cites that does not exist.[2]  This purported standard for FAA preemption is entirely contrived by Plaintiff and is precluded by Supreme Court authority.

---

[1]  Although Defendants argued in their opening brief that the question of whether Plaintiff's sexual harassment claims are arbitrable is a question that must be decided by the arbitrator, the parties have since stipulated, and the Court has so ordered, that the Court should decide that question.  Dkt. No. 49.

[2]  Plaintiff purports to quote the decision in *Gutierrez v. Wells Fargo Bank, NA,* 704 F.3d 712, 719 (9th Cir. 2012), for the proposition that *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), "struck down the *Discover Bank* rule because it was applied in a '***manner that disfavored arbitration overall and interfered with the enforcement of private arbitration agreements in general, thus standing as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress to not disfavor arbitration agreements entirely***.'" Plaintiff's Memorandum of Law ("Pl.'s MOL") at 15 (bold italics in original, underline added). The underlined words, which track Plaintiff's claimed standard for FAA preemption, do not appear anywhere in *Gutierrez* or *Concepcion*.

Second, even if § 7515 were *not* inconsistent with, or preempted by, the FAA, Plaintiff's sexual harassment claims are arbitrable because CPLR § 7515 does not apply retroactively to invalidate arbitration agreements entered into before the passage of that statute.  Plaintiff's theory of implied intent to apply CPLR § 7515 retroactively is insufficient to overcome the strong presumption against applying statutes retroactively, particularly where doing so would impair contractual rights established prior to the enactment of the statute.

Finally, it is undisputed that Plaintiff's non-sexual harassment claims are arbitrable under the Arbitration Agreement and the Court should compel them to arbitration regardless of its decision on Plaintiff's sexual harassment claims.[3]

## II. ARGUMENT

### A. CPLR § 7515 Is Inconsistent With, And Preempted By, The Federal Arbitration Act.

CPLR § 7515, by its express terms, does not apply in situations where its application would be "inconsistent with federal law."  CPLR § 7515(b)(i), (iii).  As Defendants established in their opening brief, CPLR § 7515 is inconsistent with the FAA because the FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, whereas CPLR § 7515 purports to preclude or render null and void mandatory agreements to arbitrate sex harassment claims.  As such, CPLR § 7515 is "inconsistent with federal law" and, on its face, does not apply to the Arbitration Agreement at issue here.  To the extent CPLR § 7515 applies to invalidate the Arbitration Agreement as to sexual harassment claims, it is preempted by the FAA.

---

[3] *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) ("The [FAA] has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.").

Plaintiff does not dispute, and therefore concedes, that the FAA applies to the Arbitration Agreement. Plaintiff argues that CPLR § 7515 is not inconsistent with the FAA because (1) it does not single out arbitration agreements for disfavored treatment, (2) it does not disfavor arbitration "in general" or "entirely," and (3) the FAA permits states to deny enforcement of arbitration agreements when they deem them to be inequitable. Pl.'s MOL at 14-15. Each of these arguments is baseless, as explained more fully below.

### 1. CPLR § 7515 Expressly Disfavors Arbitration Agreements.

Plaintiff first argues that CPLR § 7515 is not inconsistent with the FAA because it fits within the FAA's saving clause. The FAA's saving clause permits a court to refuse to enforce an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of ***any*** contract." 9 U.S.C. § 2 (emphasis added). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339. Plaintiff concedes that the Arbitration Agreement is not invalid based on fraud, duress, or unconscionability. Stipulation & Order ¶ 7 (Dkt. No. 36).

By its express terms, CPLR § 7515 is not a defense applicable to "any contract," but is specific to agreements to arbitrate sexual harassment claims. CPLR § 7515(a)(2). As such, this provision does not fit within the saving clause. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (holding that even if the National Labor Relations Act rendered agreements with class waivers "illegal," it was insufficient to invalidate an arbitration agreement because it was not a doctrine that applied to "any contract").

3

Plaintiff does not, and cannot, argue that CPLR § 7515 is a defense that applies to "any contract." Instead, Plaintiff argues that when read within "the bundle of provisions in New York State Assembly Bill S07507C," arbitration agreements are not placed "on unequal footing to other contract provisions." Pl.'s MOL at 11-12. This argument is without merit.

CPLR § 7515 expressly precludes arbitration agreements covering sexual harassment claims. The FAA, however, has divested New York of the power to require judicial resolution of claims where the parties have agreed to arbitrate such claims. *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984) (Congress, in passing the FAA, "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."). The fact that New York also has chosen to combat sexual harassment through other means in other provisions does not mean that the express prohibition of arbitration agreements in CPLR § 7515 is a defense to "any contract," and, of course, it is not.

The Supreme Court has regularly found preempted provisions in state statutes that preclude arbitration of certain claims, even if the state has the authority to regulate other aspects of the subject matter. In *Keating,* the Court held that a provision in California's Franchise Investment Law was preempted under the FAA where the California Supreme Court interpreted that statute to preclude arbitration of claims brought under that statute. *Id.* at 10 ("So interpreted the California Franchise Investment Law directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause."). *See also Preston v. Ferrer*, 552 U.S. 346, 355-56 (2008) (holding that the FAA preempted provisions in California's Talent Agencies Act (TAA) that granted exclusive jurisdiction to the Labor Commissioner to decide a dispute under the TAA); *Perry v. Thomas*, 482 U.S. 483, 484 (1987) (holding that the FAA preempted a provision

4

of the California Labor Code that provided that actions for the collection of wages may be maintained "without regard to the existence of any private agreement to arbitrate").

States indisputably have the authority to regulate the payment of wages (*Perry*), talent agents (*Preston*), and franchises (*Keating*) without running afoul of the FAA, but they still could not preclude agreements to arbitrate disputes under those laws.  Similarly, New York has the authority to take a wide range of actions to combat sexual harassment, but precluding arbitration of sexual harassment claims is not one of them due to the preemptive effect of the FAA.

### 2. Plaintiff's Argument That The FAA Only Preempts State Laws That Disfavor Arbitration "In General" Or "Entirely" Is Baseless Under Controlling Supreme Court Authority.

Plaintiff next argues that CPLR § 7515 is not inconsistent with the FAA because it does not evince a "general disfavor" for arbitration, or "hinder or prohibit arbitration agreements across the board," or "disfavor arbitration agreements *entirely*."  Pl's MOL at 15 – 16 (emphasis in original).  The fact that CPLR § 7515 only prohibits the arbitration of sexual harassment claims does not save it from FAA preemption any more than the limitations on arbitration of California wage claims (*Perry*), claims under the California TAA (*Preston*), or claims under the California franchise statute (*Keating*) saved those prohibitions.  *See also Concepcion*, 563 U.S. at 341 ("When state law prohibits outright the arbitration of *a particular type of claim*, the analysis is straightforward: The conflicting rule is displaced by the FAA.") (emphasis added).

As noted, Plaintiff supports this argument with a manufactured quotation from *Gutierrez v. Wells Fargo Bank, NA,* 704 F.3d 712, 719 (9th Cir. 2012).  Pl.'s MOL at 15.  *Gutierrez* held that the defendant could not seek to compel arbitration for the first time on appeal, and provides no support to Plaintiff's argument.  *Id.* at 722.

5

### 3. The FAA Does Not Permit States To Refuse To Enforce Arbitration Agreements On Equitable Grounds That Are Not Applicable To "Any Contract".

Finally, Plaintiff argues that the FAA "allows states to exercise their judgment regarding the enforceability of contracts where equitable grounds exist." Pl.'s MOL at 16 (citing 9 U.S.C. § 2). As noted, the FAA's saving clause only permits a court to deny enforcement of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It does not give states authority to invalidate arbitration agreements as inequitable. *Keating*, 465 U.S. at 11 (apart from such grounds for the revocation of "any contract," "[w]e see nothing in the [FAA] indicating that the broad principle of enforceability is subject to any additional limitations under State law.").

Because CPLR § 7515 is not a defense that applies to "any contract," it does not fit within the FAA's saving clause and it is inconsistent with, and preempted by, the FAA.[4]

### B. **CPLR § 7515 Does Not Apply Retroactively.**

CPLR § 7515 also does not apply to the Arbitration Agreement because it was entered into prior to the effective date of the law. As shown in Defendants' opening brief, CPLR § 7515(b)(i) states specifically that "no written contract, *entered into on or after the effective date of this section* shall contain a prohibited clause." CPLR § 7515(b)(i) (emphasis added). This signals the legislature's intent to apply the statute prospectively, not only for CPLR §

---

[4] As Defendants explained in their opening brief, CPLR § 7515 is also inconsistent with, and preempted by, Title VII. *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 204 (2d Cir. 1999) (enforcing mandatory arbitration of Title VII claim because the "relevant text in Title VII states that '[w]here appropriate and to the extent authorized by law, the use of ... arbitration[ ] is encouraged to resolve disputes'") (quoting C.R. Act of 1991, § 118). Plaintiff does not oppose this argument, and it is therefore conceded. *See Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-CV-7014, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (dismissing Plaintiff's claims because Plaintiff's silence in his opposition concedes Defendants' arguments).

6

7515(b)(i), but also the related CPLR § 7515(b)(iii), which declares agreements that violate the statute to be "null and void." CPLR § 7515(b)(iii).

Plaintiff argues that CPLR § 7515(b)(iii) is an independent provision that does not contain the express language stating that it applies prospectively and, by implication, must be applied retroactively to nullify arbitration agreements entered into before the effective date of the statute. Pl's MOL at 7. As noted, the Court should read the language relating to prospective application from CPLR § 7515(b)(i) as applicable to CPLR § 7515(b)(iii). However, even assuming that such language does not apply to CPLR § 7515(b)(iii), Plaintiff's theory of implied retroactivity is precluded by the strong presumption against retroactive application. Further, a proper construction of the statute confirms the prospective application of CPLR § 7515(b)(iii).

A court will not give legislation retroactive effect "'unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature.'" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272 (1994) (quoting *Chew Heong v. United States*, 112 U.S. 536, 559 (1884)).

> In [*Landgraf*], the Supreme Court set forth a two-part test for determining whether a statute applies retroactively. At the first stage, a court must "determine whether Congress has expressly prescribed the statute's proper reach." [*Landgraf*, 511 U.S.] at 280. If Congress has done so, the inquiry ends, and the court enforces the statute as it is written. *See id.* If the statute is ambiguous or contains no express command, the court proceeds to the second stage of the *Landgraf* test and "determine[s] whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the statute, as applied, would have such an effect, it will not be applied retroactively "absent clear congressional intent" to the contrary. *Id.*

*Aetna Life Ins. Co. v. Enter. Mortg. Acceptance Co., LLC*, 391 F.3d 401, 405-406 (2d Cir. 2004) (declining to apply Section 804 of the Sarbanes-Oxley Act retroactively). For the reasons set forth below, even accepting Plaintiff's construction of the statute, the legislature did not

7

"expressly prescribe[] the statute's proper reach" for CPLR § 7515(b)(iii), and applying the statute to arbitration agreements entered into before the passage of CPLR § 7515(b)(iii) would have an improper retroactive effect.

### 1. Even Accepting Plaintiff's Construction Of The Statute, It Does Not Expressly Prescribe The Proper Reach Of CPLR § 7515(b)(iii).

Even accepting Plaintiff's construction of the statute, CPLR § 7515(b)(iii) is, at best, silent on the issue of retroactive application, and does not "expressly" state that it applies retroactively. *Aetna Life Ins. Co.*, 391 F.3d at 405-406; *see also Deutsch v. Catherwood*, 31 N.Y.2d 487, 489-490 (N.Y. 1973) ("Furthermore, it is axiomatic that an amendment will have prospective application only, unless its language clearly indicates that a contrary interpretation is to be applied."). The negative implication that Plaintiff seeks to draw from the fact that CPLR § 7515(b)(i) expressly states that it applies prospectively whereas CPLR § 7515(b)(iii) is silent is an insufficient basis to overcome the strong presumption against retroactively. *Mathews v. Kidder Peabody & Co.*, 161 F.3d 156, 166-167 (3d Cir. 1998) (declining to apply statute retroactively; where Title I of the Reform Act amended three different statutes, but "only *expressly* provides for prospective application of the first of these", "[w]e decline to . . . use nothing more than a negative inference to discern a *clear* intent to apply a statute with retroactive effect") (emphasis in original). [5]

---

[5] Moreover, no logical inference can be drawn from the absence of the express prospective language in CPLR § 7515(b)(iii) because it may simply be the result of careless drafting in the haste to rush out the statute. Indeed, CPLR § 7515(b)(iii) – the very provision Plaintiff points to – is a good example of inartful drafting. That provision is entitled "**Mandatory arbitration clause** null and void" (emphasis added), yet the term "mandatory arbitration clause," which is a defined term (see CPLR § 7515(a)(3)), is not used in that provision or anywhere else in the statute. Instead, CPLR § 7515(b)(iii) uses the term "prohibited clause," the same term which CPLR § 7515(b)(i) states cannot be used in contracts "*entered into on or after the effective date of this section…*" (emphasis added). The numbering of the arbitration provisions also

8

If anything, the language of CPLR § 7515(b)(iii) suggests only prospective application. It is a general rule of statutory construction that a statute using words importing futurity, such as 'shall be,' must be construed as prospective only. *See Patricia F. v. Guiseppe F.*, 548 N.Y.S.2d 861, 863, 145 Misc. 2d 1050, 1052–53 (N.Y. Fam. Ct. 1989) (stating "a statute should not be construed as being retroactive when it is capable of any other construction"). "Shall" is used 10 times in CPLR § 7515. Specifically, "shall" is used in both (b)(i) and (b)(iii). As a result, the term "shall" still carries the same prospective meaning in CPLR § 7515(b)(iii) as the legislative assigned to it in CPLR § 7515(b)(i).

Additionally, New York State specifically notes on its website that "[t]he new [mandatory arbitration] ban will apply to contracts entered into on or after July 11, 2018." https://www.ny.gov/combating-sexual-harassment-workplace/combating-sexual-harassment-frequently-asked-questions. Under "Mandatory Arbitration" within the "Frequently Asked Questions" section, the question, "Q4. When will that new ban on mandatory arbitration clauses take effect?" is answered quite simply with: "A4. The new ban will apply to contracts entered into on or after July 11, 2018." Nothing here indicates retroactivity of CPLR § 7515(b).

A proper construction of CPLR § 7515(b)(iii) reflects the legislature's intent not to apply that provision retroactively, thereby ending the analysis. *I.N.S. v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001) ("[A] statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective"). At a bare minimum, however, CPLR § 7515(b)(iii) does not clearly state an intent to be applied retroactively, requiring the Court to determine whether application of the statute to an arbitration agreement entered into prior to the passage of the statute would have an improper retroactive effect.

---

demonstrates sloppy drafting. Subsection (a) uses Arabic numbers 1-4 and subsection (b) uses Roman numerals (i) – (iii).

9

### 2. Application of CPLR § 7515(b)(iii) To The Arbitration Agreement Would Have An Impermissible Retroactive Effect.

The application of § 7515(b)(iii) to the Arbitration Agreement would have an impermissible retroactive effect on Defendants' vested, contractual rights to arbitrate. "The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Landgraf*, 511 U.S. at 271.

It is a well-settled principle that the right to arbitrate under an arbitration agreement is itself a substantive statutory right conferred by the FAA, which cannot be eliminated absent a contrary congressional command. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (arbitration agreements must be enforced "unless the FAA's mandate has been 'overridden by a contrary congressional command.'"); *Olde Discount Corp. v. Tupman*, 1 F.3d 202, 213 (3d Cir. 1993) ("Therefore, in the context of arbitration, a litigant's procedural right to the agreed forum is raised to a substantive right by the FAA.").

Under the Arbitration Agreement, it was the parties' settled expectation that subsequent claims of sexual harassment would be arbitrated. The retroactive application of CPLR § 7515(b)(iii) to the Arbitration Agreement would have an impermissible retroactive effect on Defendants' vested, contractual rights to arbitrate. As such, the Court cannot apply CPLR § 7515(b)(iii) retroactively.

### III. CONCLUSION

Because CPLR § 7515 is inconsistent with, and preempted by, the FAA, and because CPLR § 7515(b)(iii) cannot be applied retroactively to impair the Arbitration Agreement entered into before passage of that statute, Defendants respectfully request that the Court grant their Motion and compel Plaintiff to arbitrate all of his claims and stay this action.

Dated: May 31, 2019

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/   *Sam S. Shaulson*
    Sam S. Shaulson (NY ID  2611457)
    Thomas A. Linthorst (NY ID 3991437)
    Kimberley E. Lunetta (NY ID 4421301)

    MORGAN, LEWIS & BOCKIUS, LLP
    101 Park Avenue
    New York, NY 10178-0060
    Tel.: 212-309-6000
    Fax: 212-309-6001
    sam.shaulson@morganlewis.com
    thomas.linthorst@morganlewis.com
    kimberley.lunetta@morganlewis.com

    *Attorneys for Defendants*

## **CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on May 31, 2019, via the Court's ECF/CM system.

/s/*Kimberley E. Lunetta*
Kimberley E. Lunetta
