```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MAHMOUD LATIF,                          :
                                        :
                    Plaintiff,          :      18cv11528 (DLC)
                                        :
              -v-                       :      OPINION AND ORDER
                                        :
MORGAN STANLEY & CO. LLC, MORGAN        :
STANLEY SERVICES GROUP, INC., CARMEN    :
GOMEZ, individually, LILY CHAN,         :
individually, JACQUELINE LUCAS,         :
individually, BRIAN DERBY,              :
individually, LISA SWEBERG,             :
individually, LAUREN KEIGLER,           :
individually, and MICHAEL GREY,         :
individually,                           :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X
```

APPEARANCES:

For the plaintiff:
Abraham Zev Wolf Melamed
Derek Smith Law Group, PLLC
1 Penn Plaza, Suite 49th Floor
New York, NY 10011

For the defendants:
Sam Scott Shaulson
Morgan, Lewis & Bockius LLP (New York)
101 Park Avenue
New York, NY 10178

Thomas Anton Linthorst
Kimberley E. Lunetta
Morgan, Lewis & Bockius LLP(NJ)
502 Carnegie Center
Princeton, NJ 08540

DENISE COTE, District Judge:

Mahmoud Latif ("Latif") has filed employment discrimination claims against his former employers Morgan Stanley & Co. LLC and Morgan Stanley Services Group, Inc. (collectively "Morgan Stanley") and seven individual employees of Morgan Stanley (collectively, with Morgan Stanley, "Defendants"). Defendants have moved to compel arbitration of Latif's claims. For the following reasons, that motion is granted.

**Background**

The following facts are taken from the complaint, documents that were submitted in connection with Defendants' motion to compel arbitration, and a stipulation entered into by the parties in the course of this litigation. On June 5, 2017, Latif signed a written offer of employment with Morgan Stanley (the "Offer Letter"). The Offer Letter incorporated by reference Morgan Stanley's CARE Arbitration Program Arbitration Agreement (the "Arbitration Agreement"), which was also attached to the Offer Letter. The parties agree that Latif accepted the terms and conditions set forth in the Arbitration Agreement when he signed the Offer Letter.

The Arbitration Agreement provides that any "covered claim" that arises between Latif and Morgan Stanley "will be resolved by final and binding arbitration as set forth in this

2

Arbitration Agreement and in the arbitration provisions of the CARE Guidebook," a copy of which was attached to the Arbitration Agreement. "Covered claims" are defined in the Arbitration Agreement to include, inter alia, common law claims and "statutory discrimination, harassment and retaliation claims." The Arbitration Agreement further provides that it "shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA")."

Latif alleges that, beginning in the fall of 2017, he became the target of, inter alia, inappropriate comments regarding his sexual orientation, inappropriate touching, sexual advances, and offensive comments about his religion. He also alleges that around February 2018, a female supervisor sexually assaulted him. Beginning in February 2018, Latif reported these incidents to Morgan Stanley's human resources department. Following months of email exchanges and meetings between Latif and the human resources department, Latif's employment was terminated around August 1, 2018, which is just over a year after Latif executed the Offer Letter.

Latif filed this lawsuit on December 10, 2018, alleging discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., the New York State Human Rights Law, N.Y. Executive Law § 290 et seq., the New York City Human Rights

3

Law, N.Y.C. Admin. Code § 8-101 et seq., and 42 U.S.C. § 1981; as well as assault and battery, aggravated sexual abuse, violation of the Gender Motivated Violence Protection Act, N.Y.C. Admin. Code § 8-902, and intentional and negligent infliction of emotional distress. The parties do not dispute the enforceability of the Arbitration Agreement generally nor its application to all but one category of Latif's claims. Accordingly, on March 21, the Honorable Robert W. Sweet, who then presided over this case, endorsed a stipulation between the parties in which they agreed that the Arbitration Agreement was enforceable as to all of Latif's claims except for his claims of sexual harassment.

Latif filed an amended complaint on May 3, 2019.[1] Defendants filed the instant motion to compel arbitration and stay the proceedings on May 7. The only dispute between the parties is whether Latif's sexual harassment claims are subject to the Arbitration Agreement in light of a recently enacted New York Law, N.Y. C.P.L.R. § 7515 ("§ 7515"). The parties do not dispute that this issue is to be resolved by this Court. The motion to compel was fully submitted on May 31.

---

[1] The amended complaint was filed following this Court's denial of Latif's motion to proceed anonymously.

**Discussion**

When deciding motions to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). On a motion for summary judgment, courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," and draw all reasonable inferences in favor of the non-moving party. Id. (citation omitted). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. (citation omitted). Courts must decide whether parties have agreed to arbitrate "unless the parties clearly and unmistakably provide otherwise." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407, 1412 (2019). The Supreme Court has repeatedly instructed that the FAA reflects "both a liberal federal policy favoring arbitration and the fundamental

5

principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation omitted). Consistent with this policy, "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).

> Under Section 2 of the Federal Arbitration Act ("FAA"),
>
> a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity <u>for the revocation of any contract</u>.

9 U.S.C. § 2 (emphasis supplied). This "saving clause recognizes only defenses that apply to 'any' contract . . . establish[ing] a sort of 'equal-treatment' rule for arbitration contracts." Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1622 (2018). Thus, while arbitration agreements may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, . . . defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" will not invalidate such an agreement. Concepcion, 563 U.S. at 339 (citation omitted). "[T]he saving clause does not save defenses that target

arbitration either by name or by more subtle methods." Epic Sys., 138 S. Ct. at 1622.

The FAA's policy favoring the enforcement of arbitration agreements is not easily displaced by state law. "[S]tate law is preempted to the extent it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the FAA." Lamps Plus, 139 S. Ct. at 1415 (citation omitted). "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." Concepcion, 563 U.S. at 341.

Section 7515 is titled "Mandatory arbitration clauses; prohibited." It was signed into law in April 2018 and became effective on July 11, 2018. The law was enacted as Part KK, Subpart B of the 2018-2019 New York budget bill. Part KK of this bill contains six subparts all addressing sexual harassment. These subparts address, among other things, certifications concerning sexual harassment in bids submitted to the state, "reimbursement of funds paid by state agencies, state entities and public entities for the payment of awards adjudicated in sexual harassment claims," and a model policy and training program for the prevention of sexual harassment. 2018 N.Y. Sess. L., ch. 57, at 4-5. The bill was described in Senate Floor debate as "sweeping legislation that deals with the

7

scourge of sexual harassment" and that "handles all different kinds of sexual harassment situations."  N.Y. State Senate, Stenographic Rec., 241st Leg., Reg. Sess., at 1855 (Mar. 30, 2018).

Section 7515(b) contains three subparts:

(i) Prohibition. <u>Except where inconsistent with federal law</u>, no written contract, entered into on or after the effective date of this section shall contain a prohibited clause as defined in paragraph two of subdivision (a) of this section.

(ii) Exceptions.  <u>Nothing contained in this section shall</u> be construed to <u>impair</u> or prohibit an employer from incorporating a non-prohibited clause or other <u>mandatory arbitration provision</u> within such contract, <u>that the parties agree upon</u>.

(iii) Mandatory arbitration clause null and void. <u>Except where inconsistent with federal law</u>, the provisions of such prohibited clause as defined in paragraph two of subdivision (a) of this section shall be null and void. The inclusion of such clause in a written contract shall not serve to impair the enforceability of any other provision of such contract.

N.Y. C.P.L.R. § 7515(b) (emphasis supplied).  Section 7515 defines "prohibited clause" as "any clause or provision in any contract which requires as a condition of the enforcement of the contract or obtaining remedies under the contract that the parties submit to mandatory arbitration to resolve any allegation or claim of an unlawful discriminatory practice of sexual harassment."  N.Y. C.P.L.R. § 7515(a)(2).

8

Section 7515 was recently cited in Justice Ruth Bader Ginsburg's dissenting opinion in Lamps Plus as an example of state action that "endeavor[s] to safeguard employees' opportunities to bring sexual harassment suits in court" and "ameliorate[s] some of the harm . . . occasioned" by recent Supreme Court employment arbitration decisions. Lamps Plus, 139 S. Ct. at 1422 (Ginsburg, J., dissenting). The parties have not cited and this Court has not found any reported decision applying § 7515.

Under the terms of the Arbitration Agreement, Latif's sexual harassment claims are subject to mandatory arbitration. Section 7515 renders agreements to arbitrate sexual harassment claims null and void "[e]xcept where inconsistent with federal law." N.Y. C.P.L.R. 7515(b)(iii). Here, application of Section 7515 to invalidate the parties' agreement to arbitrate Latif's claims would be inconsistent with the FAA. The FAA sets forth a strong presumption that arbitration agreements are enforceable and this presumption is not displaced by § 7515.

Moreover, the FAA's saving clause does not render the parties' Arbitration Agreement unenforceable here. Section 7515(b) applies only to contract provisions that require "mandatory arbitration to resolve any allegation or claim of an unlawful discriminatory practice of sexual harassment." N.Y. C.P.L.R. § 7515(a)(2). This provision is not a "ground[] as

9

exist[s] at law or in equity for the revocation of any contract," 9 U.S.C. § 2, but rather a "state law prohibit[ing] outright the arbitration of a particular type of claim," which, as described by the Supreme Court, is "displaced by the FAA." Concepcion, 563 U.S. at 341.[2]

Latif argues that, when read in conjunction with the bundle of sexual harassment provisions passed in the same bill, § 7515 reflects a general intent to protect victims of sexual harassment and not a specific intent to single out arbitration clauses for singular treatment. He points out that the statute affects a number of different types of contracts and contract provisions, and, as such, does not run afoul of the FAA's prohibition on arbitration-specific defenses. Latif similarly argues that because § 7515 does not disfavor <u>all</u> arbitration, but only arbitration of sexual harassment claims, it is not inconsistent with the FAA. These arguments are unavailing. The fact that § 7515 was enacted concurrently with other laws that address sexual harassment does not alter the plain language of the law. The bundle of laws that make up Part KK of the 2018-19

---

[2] On June 19, 2019, the New York legislature passed bill S6577/A8421, which would, <u>inter alia</u>, amend § 7515 to change the definition of "prohibited clause" and "mandatory arbitration clause" to encompass mandatory arbitration of claims of discrimination generally, rather than specifically of sexual harassment. For the same reasons described above, § 7515 as so amended would not provide a defense to the enforcement of the Arbitration Agreement.

10

budget bill were clearly intended to address sexual harassment; nothing in the bill suggests that the New York legislature intended to create a generally applicable contract defense.

Latif also suggests that because clauses mandating arbitration of sexual harassment claims interfere with New York's substantial state interest in transparently addressing workplace sexual harassment, § 7515 is a ground "in equity for the revocation of any contract" and thus not displaced by the FAA. 9 U.S.C. § 2. This argument again ignores the plain language of the FAA's saving clause and the Supreme Court's many decisions construing it, which require any ground providing an exception to arbitration, whether in law or equity, to be generally applicable. Section 7515 presents no generally applicable contract defense, whether grounded in equity or otherwise, and as such cannot overcome the FAA's command that the parties' Arbitration Agreement be enforced.[3]

---

[3] The Defendants also argue that § 7515(b)(iii) does not nullify the parties' agreement to arbitrate all of Latif's claims because the Arbitration Agreement was entered into prior to the enactment of § 7515 and the law does not apply retroactively. Because the parties' dispute is resolved on other grounds, this argument need not be addressed.

11

## **Conclusion**

The Defendants' May 7, 2019 motion to compel arbitration is granted. The action is stayed pending the outcome of arbitration proceedings.

Dated:  New York, New York
        June 26, 2019

```
                                    _____
                                          DENISE COTE
                                    United States District Judge
```